216 B.R. 278 (1997)
In re James H. HATTON, Debtor.
UNITED STATES of America, Appellant,
v.
James H. HATTON, Appellee.
BAP No. WW-97-1430-RYHR, Bankruptcy NO. 94-32774T, Adversary No. 96-37271.
United States Bankruptcy Appellate Panel of the Ninth Circuit.
Argued and Submitted October 24, 1997.
Decided November 28, 1997.
*279 Deirdre A. Donnelly, U.S. Department of Justice, Washington, DC, for United States of America.
Christopher E. Allen, Bonneville, Viert, Morton & McGoldrick, Tacoma, WA, for James H. Hatton.
Before RYAN, HAGAN, and RUSSELL, Bankruptcy Judges.

OPINION
RYAN, Bankruptcy Judge.
Debtor James H. Hatton ("Appellee"), filed a complaint (the "Complaint") to have his tax liabilities for various years, including 1983, declared dischargeable. Appellant, the United States of America ("Appellant"), admitted that Appellee's tax liabilities for all years except 1983 were discharged. Appellee brought a motion for summary judgment (the "Motion"), which the bankruptcy court granted. Appellant timely appealed. We AFFIRM.

I. FACTS
The facts relevant to this appeal are not in dispute. On July 15, 1994, Appellee filed a chapter 7 bankruptcy. Among the debts listed in his schedules filed with his bankruptcy petition, Appellee listed federal tax obligations for the years 1983 through 1986 and 1988 through 1990. On October 12, 1994, Appellee received a discharge. On January 15, 1995, Appellant filed a secured claim for $43,611.32 (the "Claim") for the same tax years that Appellee listed on his schedules.
Alleging that Appellant had wrongfully converted Appellee's tax refunds and applied them to the Claim, Appellee filed the Complaint on November 1, 1996 to have the bankruptcy court determine that the taxes, interest, and penalties making up the Claim were discharged. Appellee also requested the return of all tax refunds applied to the Claim. Appellant answered admitting that tax liabilities, including any interest and penalties, for tax years 1984 through 1986 and 1988 through 1990 were discharged. However, Appellant asserted that any taxes, interest, and penalties for 1983 were not discharged. Additionally, Appellant claimed that because the Claim was secured it had the right to collect against Appellee's exempt and abandoned property.
On April 2, 1997, Appellee filed the Motion seeking to have the bankruptcy court determine that his 1983 tax obligations were discharged. The facts supporting the Motion indicated that on March 25, 1985, the Internal Revenue Service ("IRS") assessed the 1983 taxes against Appellee when it filed a form 1040 on his behalf (the "Form 1040"). The Form 1040 indicated a tax liability of $3,824, less a credit of $1,032, plus penalties of $1,043. Appellant later assessed a civil penalty on August 19, 1985 for $200. Appellee received a letter dated November 29, 1991 from revenue officer Charles Emerson requesting a meeting to discuss payment of outstanding taxes and penalties. Appellee and his attorney, Paul Alvestead, met Emerson, and Emerson produced a copy of the Form 1040. After reviewing the Form 1040, Appellee acknowledged that he owed the taxes. Appellee testified that, if requested, he would have signed the Form 1040. He further testified that, at all times, he was willing to provide the IRS with any additional information, but the IRS did not request more information.
The focus of the meeting then shifted to payment of the delinquent tax obligations. Over several months, the parties conducted negotiations that eventually resulted in the execution of an installment agreement on IRS Form 433-D (the "Installment Agreement"). The Installment Agreement, approved June 16, 1992, required Appellee to pay $200 per month to satisfy his tax obligations aggregating $35,191.20 for the delinquent tax years including 1983. Appellee made payments in accordance with the terms of the Installment Agreement until he filed *280 bankruptcy in 1994 and, by that time, had paid the principal tax obligation for 1983. According to the Claim, at the time of the bankruptcy petition, Appellee still owed the civil penalty of $200 for 1983, other penalties of $135.02, and total interest of $7,984.47.
At the hearing on the Motion on May 1, 1997, the bankruptcy court agreed with Appellee that under the circumstances Appellee's 1983 tax obligations should be discharged and granted the Motion. The order granting the Motion was entered on May 22, 1997, and Appellant filed its notice of appeal on May 30, 1997.

II. ISSUE ON APPEAL
Whether the bankruptcy court erred in discharging Appellee's 1983 tax obligation to Appellant.

III. STANDARD OF REVIEW
We review a grant of summary judgment de novo. Bank of Los Angeles v. Official PACA Creditors' Comm. (In re Southland + Keystone), 132 B.R. 632, 637 (9th Cir. BAP 1991). Because there are no issues of fact in controversy, our role is limited to ascertaining whether the bankruptcy court correctly applied the relevant law.

IV. DISCUSSION
Under Bankruptcy Code (the "Code")[1] §§ 523(a)(1)(B)(i) and (ii)[2], a chapter 7 discharge does not discharge an individual debtor from a tax debt if a required return was not filed or was filed after the date on which such return was last due and after two years before the date of the filing of the bankruptcy petition. "The language of this statute is clear. An individual's tax liability is nondischargeable in bankruptcy when the liability results from the individual's failure to file a return." Bergstrom v. United States of America (In re Bergstrom), 949 F.2d 341, 342 (10th Cir.1991). A person with tax liability must file a tax return on an approved form. 26 U.S.C. § 6011(a).[3] Appellee was liable for taxes for 1983, and he did not file a tax return on an approved form for that tax year. Additionally, upon the signing of the Installment Agreement (combined with the previously filed Form 1040), the requirement of filing a tax return more than two years prior to the filing of the bankruptcy petition was satisfied.
Under IRC § 6020(b)(1), the IRS can file a return on behalf of a taxpayer based on available information. The IRS did that here in 1985 when it filed the Form 1040. "Any return so made and subscribed by the Secretary shall be prima facie good and sufficient for all legal purposes." IRC § 6020(b)(2). The courts, however, have almost unanimously held that the filing of a return by the IRS under § 6020(b)(1) does not satisfy the § 523(a)(1)(B)(i) requirement. Bergstrom, 949 F.2d at 343 (citing a number of bankruptcy cases); Lowrie v. United States of America (In re Lowrie), 162 B.R. 864, 867 (Bankr.D.Nev.1994). Appellee contends that an exception to this general rule of nondischargeability has been recognized. The bankruptcy court in Lowrie attempted to harmonize conflicting cases in this area. The debtor, Lowrie, failed to file tax returns for two years. After meeting with the IRS agent, Lowrie signed 1902-B forms attached to the 1040 forms prepared by the agent. However, the debtor did not sign the 1040 forms. Id. at 865. According to the testimony of Lowrie's attorney, the IRS agent represented that the forms substituted for the filing of the debtor's 1040 returns. Id. at 866. Lowrie argued that her tax debts should be discharged as an exception to the *281 general rule, citing Carapella v. United States of America (In re Carapella), 84 B.R. 779 (Bankr.M.D.Fla.1988), the lone case at the time holding for the debtor in this situation.
In Carapella, the bankruptcy court held that where the debtor had signed an 870 form, the debtor had effectively filed a return under IRC § 6020(a). Id. at 782. Under IRC § 6020(a), the IRS may file a 1040 form with the help of the taxpayer, and if signed by the taxpayer, it will become the taxpayer's return. The bankruptcy court relied on Revenue Ruling 74-203, which held that an executed 870 form with accompanying schedules constitutes a return under IRC § 6020(a) and Germantown Trust Co. v. Commissioner, 309 U.S. 304, 309, 60 S.Ct. 566, 568-69, 84 L.Ed. 770 (1940). Carapella, 84 B.R. at 782. In Germantown, the Supreme Court rejected the contention that "where a fiduciary, in good faith, makes what it deems the appropriate return, which discloses all of the data from which the tax . . . can be computed, such a return is to be deemed no return." 309 U.S. at 309, 60 S.Ct. at 569. In holding that the 870 form was a substituted return even though the 870 form had no attached schedules, the bankruptcy court in Carapella found that the IRS had sufficient information because it had prepared the summary of taxes owed and assessed the taxes due and the debtor had acknowledged the assessments as his tax liability. 84 B.R. at 782.
Distinguishing Carapella, the bankruptcy court in Gushue v. Internal Revenue Service (In re Gushue), 126 B.R. 202 (Bankr.E.D.Pa. 1991), held that a debtor could not successfully argue that a stipulation, reached after the debtor contested a tax assessment in the tax court, constituted an IRC § 6020(a) return. The court stated that IRC § 6020(a) was "designed to benefit a taxpayer who, after failing to file a return, cooperates with the IRS and provides all information necessary to enable the IRS to prepare the return for the taxpayer." Id. at 204-05.
The Lowrie court harmonized these cases by contrasting the situation where the debtor does not cooperate with the IRS, does not sign anything, and does not admit to the taxes owing, with the situation where the debtor meets with the IRS, signs a form containing sufficient information to calculate the tax, and admits to the taxes owing. In the latter situation, the Lowrie court held that the documents signed by the debtor are appropriately treated as filed returns for purposes of § 523(a)(1)(B)(i). Lowrie, 162 B.R. at 867. The court, therefore, accepted the signed 1902-B forms admitting to the tax liability as the equivalence of a return and discharged the debtor's tax liabilities. Id.
After Lowrie, the bankruptcy court in Berard v. United States (In re Berard), 181 B.R. 653 (Bankr.M.D.Fla.1995), treated a signed form 4549 as a return for purposes of § 523(a)(1)(B)(i). The court stated that "it is important to note the acceptance of the Form 4549, and the Debtors' consent to assessment and collection, relieved the Internal Revenue Service of certain statutory duties [from which] it would not otherwise be relieved." Id. at 656.
Appellant argues that Appellee's failure to file a tax return precludes a discharge of his 1983 tax liabilities. Because Appellee did not file a form 1040, the question is whether, under the circumstances here, he should be deemed to have filed a required return under § 523(a)(1)(B)(i). Appellant asserts that the bankruptcy court should apply nonbankruptcy law in making this determination, citing IRS v. Levy (In re Landbank Equity), 973 F.2d 265, 270 (4th Cir.1992) (holding that in objecting to a tax claim the debtor has the burden of proving any deductions). However, in Franchise Tax Board of the State of California v. MacFarlane (In re MacFarlane), 83 F.3d 1041, 1045 (9th Cir. 1996), the Ninth Circuit rejected Landbank and held that the Franchise Tax Board had the burden of proof stating that "[t]he bankruptcy code is silent on the allocation of the ultimate burden of proof in this case. In the absence of a statutory directive, we consider it appropriate to turn to policy considerations that underlie the bankruptcy code." Therefore, because the Code does not define what "a return, if required" means, MacFarlane supports the view that the bankruptcy court may appropriately consider policy considerations behind the bankruptcy law in applying this language in § 523(a)(1)(B)(i) and is not *282 limited to just nonbankruptcy law. Even if nonbankruptcy law is the sole source of reference, the Germantown decision supports the view that all the requirements for filing a tax return on an approved form do not need to be satisfied in order for the document to constitute a return where the taxpayer acts in good faith, makes what it deems the appropriate return, and discloses all relevant information. 309 U.S. at 309-10, 60 S.Ct. at 568-69.
Appellant also argues that a return prepared by the IRS and not signed by the taxpayer is not a filed return. While this is the general rule, exceptions to this view have developed in the specific factual settings described above where the debtor has cooperated, the tax is assessed, and the debtor admits to the tax liability. In response to those cases, Appellant argues that Appellee cannot satisfy the four-prong test of Beard v. Commissioner of Internal Revenue, 82 T.C. 766, 777, 1984 WL 15573 (1984), aff'd, 793 F.2d 139 (6th Cir.1986), which is: (1) there must be sufficient data to calculate a tax liability; (2) the document must purport to be a return; (3) an honest and reasonable attempt must be made to satisfy the requirements of the tax laws; and (4) the taxpayer must execute the return under penalty of perjury. Appellant asserts that the Installment Agreement cannot be viewed as satisfying these requirements.
The Installment Agreement provides no data to support the tax calculation; however, there was no need for additional data. The Installment Agreement must be viewed in context. Appellant had filed the Form 1040 based on information that it had. It had the opportunity to ask for additional information when it met with Appellee. It appeared satisfied with the information that it had and its assessment of Appellee's tax liability. Fully satisfied, the focus shifted to collection. Appellant cannot say now that it did not have enough data regarding the 1983 taxes.
Appellant next argues that the Installment Agreement does not purport to be a return. That is true, however, the Form 1040 was a return. The facts indicate that both parties adopted that return as accurate and sufficient.
Appellant also points out that the Installment Agreement was not signed under penalty of perjury. Although this is true, Appellee was not unwilling to sign the Form 1040 under penalty of perjury. He was not asked to sign the document because Appellant was not interested in challenging the information on the Form 1040, and Appellee did not contest the assessment.
Lastly, Appellant contends that Appellee did not make an honest and reasonable attempt to satisfy the tax laws. At the time Appellee met with Appellant's agent, Appellee was very cooperative. He was not contesting the assessment, and he was willing to provide Appellant with any additional information. Additionally, he entered into good faith negotiations regarding paying his tax liabilities, and eventually the parties reached agreement on a payment schedule. Moreover, Appellee made payments for approximately 23 months until he filed bankruptcy.
Although Appellee technically did not satisfy the four-prong test of Beard, his actions certainly were consistent with the spirit of that decision. If we were to take the technical road, we would elevate form over substance without serving the Code's strong public policy to give an honest debtor a fresh start. See Chang v. Beaupied (In re Chang), 210 B.R. 578, 581 (9th Cir. BAP 1997). We acknowledge that the IRS also has a strong public policy interest in requiring taxpayers to file tax returns. Sometimes, as is the case here, these public policies conflict when debtors file bankruptcy. When that happens and certain sections of the Code are subject to reasonable interpretation, the bankruptcy court may properly consider the policy considerations behind the Code in reaching an appropriate balance. MacFarlane, 83 F.3d at 1045.
This is what the Lowrie court did in harmonizing the conflicting case in this area. We will take the same approach. Appellee met with Appellant to resolve his tax problems. He cooperated at all times in the process. He acknowledged his tax obligations and accepted without protest the Appellant's calculations as set forth on the Form 1040. He then signed the Installment *283 Agreement, accepting responsibility. As further evidence of his good intentions, he fulfilled his obligations under the Installment Agreement until he filed bankruptcy 23 months later. Under these circumstances, Appellee satisfied the requirement under § 523(a)(1)(B)(i) by providing the equivalence of a return for his 1983 taxes.
Even if this were not the case, § 523(a)(1)(B)(i) indicates that a "required" return must be filed. Although a return was "required" for the 1983 tax year, the combination of the IRS' filing of the Form 1040 plus the settlement with Appellee satisfied any further "required" return.
For purposes of § 523(a)(1)(B)(i), a holding that the filing of a return is "required" under these circumstances would undercut valid policy considerations of the Code to interpret exceptions to discharge narrowly and to provide the honest debtor with a fresh start. We decline to do that here.

V. CONCLUSION
Because Appellee cooperated with the IRS, accepted his assessed tax liability without objection, signed the Installment Agreement to pay his tax liability, and performed his obligations under the Installment Agreement over a 23-month period, Appellee provided the equivalence of a required return and, therefore, satisfied the requirement for filing a required tax return under § 523(a)(1)(B)(i). Additionally, under the circumstances here, Appellee was not required to file a form 1040 to satisfy the requirement of § 523(a)(1)(B)(i). Accordingly, we AFFIRM.
NOTES
[1] The Code is set forth in 11 U.S.C. §§ 101-1330 (1994).
[2] Code §§ 523(a)(1)(B)(i) and (ii) state in pertinent part:

(a) A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt 
(1) for a tax or a customs duty 
. . . .
(B) with respect to which a return, if required 
(i) was not filed; or
(ii) was filed after the date on which such return was last due, under applicable law or under any extension, and after two years before the date of the filing of the petition;
11 U.S.C. §§ 523(a)(1)(B)(i) and (ii) (1994).
[3] References to Title 26, the Internal Revenue Code, shall be "IRC § ____."