In re Arthur C. JOHNSON, Debtor.

Arthur C. Johnson, Plaintiff,

v.

United States of America, Department of Treasury, Internal Revenue Service, Defendant.

Bankruptcy No. 97–6150–8G7.
Adversary No. 97–721.

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

March 11, 1999.

Edward P. Phillips, Coral Springs, FL, for Plaintiff.

Philip Doyle, Trial Attorney, Tax Division, U.S. Department of Justice, Washington, DC, Charles R. Wilson, United States Attorney, Tampa, FL, for Defendant.

## FINDINGS OF FACT, CONCLUSIONS OF LAW, AND MEMORANDUM OPINION

PAUL M. GLENN, Bankruptcy Judge.

**THIS CASE** came before the Court for a final evidentiary hearing on a Complaint to Determine Dischargeability of Debt filed by the Debtor, Arthur C. Johnson. In the Complaint, the Debtor seeks a determination that his income tax liabilities for 1983, 1984, 1985, 1986, 1987, 1988, 1989, and 1990 are dischargeable pursuant to § 507(a)(8) and § 523 of the Bankruptcy Code. The United States of America, Department of Treasury, Internal Revenue Service (the Government) concedes that the liabilities for each of the years set forth in the Complaint are dischargeable, with the exception of the liability for the 1989 tax year. With respect to the liability for 1989, the Government asserts that the Debtor did not file a tax return, and that the obligation is therefore nondischargeable pursuant to § 523(a)(1)(B)(i) of the Bankruptcy Code.

The Debtor admits that he did not file a form 1040 for the 1989 tax year. The Debtor contends, however, that he cooperated with the Government in determining his tax liability for 1989, that he furnished the Government with the information necessary to establish his tax liability for that year, and that he stipulated to the entry of a Tax Court Decision fixing his liability. The Debtor asserts, therefore, that he filed a return within the meaning of § 523(a)(1)(B), and that the obligation is therefore not excepted from discharge pursuant to that section.

### Background

The Debtor worked as a commercial fisherman from 1983 to 1990. The Debtor did not file income tax returns for those years when the returns became due. The Debtor testified that he realized that the returns were due, but because of the cost involved in the preparation of the returns, his lack of funds to pay for the preparation of the returns or the tax which would be

due, his lack of records, and his tendency to procrastinate, he did not file the returns when they were due.

In 1989, the Debtor was employed for four months by Tara M, Inc. as the captain of a fishing boat known as the Tara M. It appears that the crew of the Tara M returned a "gross catch" worth $107,985.80 in the spring of 1989. (Debtor's Exhibit 8). It further appears that the Debtor received the total sum of $31,047.32 from Tara M, Inc. in 1989. (Debtor's Exhibit 8, Form 1099–Misc). The total amount paid to the Debtor in 1989 was designated as "fishing boat proceeds" on Tara M, Inc.'s Form 1099, and may represent the "crew's share" of the gross catch or proceeds from the fishing trip.

There is no evidence in the record of any communication between the Debtor and the Government regarding income tax for any of the tax years from 1983 to 1990 until November, 1993.

On November 10, 1993, the Government issued a Notice of Deficiency to the Debtor with respect to the tax year ended December 31, 1989. (Debtor's Exhibit 1). In the Notice, the Government informed the Debtor that a deficiency in his income tax had been determined for the tax year ending on December 31, 1989, and that the amount of the deficiency was $13,381.00. A "Notice of Deficiency—Waiver" attached to the Notice reflects that the total amount due from the Debtor, including interest and penalties, was $21,375.11. A "Summary of Income Sources" also attached to the Notice indicates that the Debtor received the sum of $31,047 in "fishing income" in 1989. Finally, the Notice informs the Debtor that he was entitled to file a petition with the United States Tax Court if he contested the deficiency.

On February 7, 1994, the Debtor filed a Petition in the United States Tax Court and disputed the tax and penalties set forth in the Notice of Deficiency. (Debtor's Exhibit 2). In the Petition, the Debtor asserted that the calculation did not allow any deductions for the ordinary and necessary business expenses incurred by him in the tax year. It appears that the Petition was the first communication from the Debtor to the Government regarding his 1989 tax liability.

On March 9, 1994, the Government answered the Petition and asserted that the Debtor had failed to file a federal income tax return for the 1989 tax year. (Debtor's Exhibit 3). The case was referred to an Appeals Officer for the purpose of encouraging a settlement of the pending dispute. (Debtor's Exhibit 4).

The Debtor furnished the following documentation to the Appeals Officer in connection with the parties' settlement discussions:

1. Written statements of Peter Lindgren regarding certain standard practices in the commercial fishing industry. (Debtor's Exhibits 5,7). Mr. Lindgren, who is the president of a fishing company, stated that the profits of a fishing vessel are generally divided among the owner of the vessel, the captain, and the crew, either on a 50/50 basis, or on a 60/40 basis if expenses are taken into account. Mr. Lindgren also stated that the captain of the vessel generally controls the wages of the crew in small operations.

2. An Affidavit of the Debtor. (Debtor's Exhibit 6). In paragraphs 2 and 3 of the Affidavit, the Debtor states:

In 1989, during approximately the first three or four months of the year, I was employed by Tara M., Inc. . . . Tara M., Inc. paid me $31,047.00 in 1989; however, I paid a portion of this amount to my crew. I do not remember exactly, but my estimate is that I gave 50% to 70% of the $31,047.00 to my crew, which was the customary way a captain divided the compensation between himself and his crew. My crew consisted of George Johnson (who was with us for only several weeks in 1989), Tommy Eist, Jeff Tucker and several other individuals

whose names I do not currently remember.

The Debtor also stated in his Affidavit that the Tara M sank in April of 1989, and that all of his financial records were lost. The Affidavit was prepared "in connection with reaching a settlement" of the Tax Court litigation, and contains no other information.

3. A document entitled "Tara M, Inc. Trip Settlement" and Tara M, Inc.'s Form 1099–MISC. (Debtor's Exhibit 8). The Form 1099 reflects that the Debtor received the sum of $31,047.32 from Tara M, Inc. as "fishing boat proceeds."

The parties reached an agreement, and on February 15, 1995, the Appeals Officer wrote a letter to the Debtor's attorney enclosing a "proposed stipulation-decision" incorporating the agreement. (Debtor's Exhibit 9). An Audit Statement apparently prepared by the Appeals Officer on the same date indicates that the Debtor's income for 1989 had been adjusted to account for "Schedule C expenses" in the amount of $12,419, that the Debtor's taxable income was reduced from $36,090 to $23,671 as a result of the adjustment, and that the Debtor's corrected tax liability was therefore reduced to $8,292. The Debtor signed the proposed stipulated decision, and the Decision was entered by the United States Tax Court on March 30, 1995. (Debtor's Exhibit 12). The Decision provides that the deficiency in income tax due from the Debtor for the 1989 tax year amounted to $8,292, and that additions to tax were also due in the aggregate amount of $2,566.

The parties agree that the Debtor filed returns for 1983, 1984, 1985, 1986, 1987, 1988, and 1990 in early 1995.

The Debtor testified that he owed over $120,000 to the Government with respect to taxes. Although no documentary evidence is in the record, the Debtor testified that he entered into an installment agreement with the Government whereby he was to make payments of $300 monthly to the Government.

The Debtor filed his petition under chapter 7 of the Bankruptcy Code on April 17, 1997, a little more that two years after the Decision relating to the 1989 taxes was entered and the returns for the other years from 1983 to 1990 were filed.

The Government acknowledges that the taxes for 1983, 1984, 1985, 1986, 1987, 1988, and 1990 are dischargeable because returns were filed prior to two years before the filing of the petition. However, the Government contends that the Debtor did not file a tax return for 1989, and that the tax liability for that year is therefore nondischargeable pursuant to § 523(a)(1)(B)(i) of the Bankruptcy Code.

The Debtor contends that he cooperated with the Government in determining his tax liability for 1989, that he furnished the Government with the information necessary to establish his tax liability, and that he stipulated to the entry of a Tax Court Decision fixing his liability for the tax year at issue. Consequently, the Debtor asserts that he "filed a return" within the meaning of § 523(a)(1)(B)(i), and that the obligation is therefore not excepted from discharge pursuant to that section.

### Discussion

**11 U.S.C. § 523. Exceptions to discharge**

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

(1) *for a tax* or customs duty—

(B) *with respect to which a return, if required*—

(i) *was not filed;* or

(ii) was filed after the date on which such return was last due, under applicable law or under any extension, and after two years before the date of the filing of the petition; . . .

(Emphasis supplied).

The discharge of bankruptcy does not discharge a debtor from a debt for a tax

with respect to which a return was required but not filed. 11 U.S.C. § 523(a)(1)(B)(i).

■ The Bankruptcy Code does not define which taxes require returns, what constitutes a return, or what constitutes the filing of such a return. *In re Berard,* 181 B.R. 653, 655 (Bankr.M.D.Fla.1995). The requirements for a return vary with the various types of taxes, and the requirements which relate to the particular type of tax must be examined.

The tax involved in this case is the United States individual income tax.

An individual with taxable income is required to file a return. 26 U.S.C. § 6012(a)(1)(A). The return must be made according to the prescribed forms and regulations, and it must contain the information required by such forms or regulations. 26 U.S.C. § 6011(a).

The regulations provide that Form 1040 is prescribed for general use. 26 C.F.R. § 1.6012–1(a)(6).

If an individual does not make the return as required, he or she may consent to disclose all information necessary for the preparation of the return, and the Government may prepare such return, which, if signed by the individual, may be received by the Government as the return of such individual. 26 U.S.C. § 6020(a).

In some circumstances when an individual has not made a return, the Internal Revenue Code provides that the Government may make a return without the cooperation of the individual. 26 U.S.C. § 6020(b). Courts are uniform in holding that substitute returns prepared by the Government pursuant to 26 U.S.C. § 6020(b) do not constitute filed returns for the purposes of § 523(a)(1)(B)(i). *See,* for example, *In re Bergstrom,* 949 F.2d 341 (10th Cir.1991).

Any return, statement, or other document required by statute or regulation must be signed in accordance with the prescribed form or regulation. 26 U.S.C. § 6061. Any return, declaration, statement, or other document required by statute or regulation must contain or be verified by a written declaration that it is made under the penalties of perjury. 26 U.S.C. § 6065.

The Debtor does not dispute the fact that an income tax return was required for 1989. The issue in this case is whether or not a return was filed. The Debtor contends that he cooperated with the Government in determining his tax liability, that he furnished the Government with the information necessary to establish his tax liability, and that he signed a stipulation to the entry of a Tax Court Decision fixing his liability. The Debtor does not contend that a return was prepared by the Government without his cooperation.

■ "The word 'return' is not a technical word of art." *Florsheim Bros. Drygoods Co. v. United States,* 280 U.S. 453, 50 S.Ct. 215, 74 L.Ed. 542 (1930). Although a document may not be in the form prescribed for use as the appropriate return, it nevertheless may constitute a return.

> Even though a document is not in the form prescribed for use as the appropriate return, it may constitute a return if it discloses the data from which the tax can be computed, is executed by the taxpayer, and is lodged with the Internal Revenue Service....
>
> Accordingly, the executed Form 870 with accompanying schedules is a return under section 6020(a) of the Code ....
>
> The above conclusion applies equally to a Form 1902–E, Report of Individual Income Tax Audit Changes, or Form 4549, Income Tax Audit Changes, when signed by a husband and wife.

Revenue Ruling 74–203.

■ Courts agree that forms other than a Form 1040 may constitute a return for the purposes of § 523(a)(1)(B)(i). In *In re Hatton,* 216 B.R. 278 (9th Cir. BAP 1997), the court found that the debtor had provided "the equivalence of a return" by meet-

ing with the Government to resolve his tax concerns, cooperating in the process, acknowledging his tax obligations, accepting without protest the Government's calculations, and then signing an installment agreement, to which a Form 1040 was attached, accepting responsibility for the taxes. *In re Hatton,* 216 B.R. at 282–83. In *In re Berard,* 181 B.R. 653, 657 (Bankr. M.D.Fla.1995), the court held that a form other than a Form 1040 may be considered a return if it supplies the Government with all of the necessary information to determine the debtor's tax liability and the debtor assents to the assessment of the tax, so that the Government is relieved of certain statutory duties. This Court also has acknowledged that a document other than a Form 1040 may constitute a return under some circumstances. *In re Parker,* 199 B.R. 792 (Bankr.M.D.Fla.1996).

 In circumstances where a form other than a Form 1040 may constitute a return, the statutory requirements and general principles applicable to returns remain applicable. The information supplied must be all of the information necessary to the calculation of any tax which might be due. *See* 26 U.S.C. §§ 6011, 6020; *Germantown Trust Co. v. Commissioner of Internal Revenue,* 309 U.S. 304, 60 S.Ct. 566, 84 L.Ed. 770 (1940). In most circumstances, the form supplying the information must be signed and verified. *See* 26 U.S.C. §§ 6061, 6065, and 6020; *In re Bergstrom,* 949 F.2d 341 (10th Cir.1991). Additionally, the information must honestly and reasonably be intended as a return. *Florsheim Bros. Drygoods Co. v. United States,* 280 U.S. 453, 50 S.Ct. 215, 74 L.Ed. 542 (1930).

The Government cites *In re Gushue,* 126 B.R. 202 (Bankr.E.D.Pa.1991) as the case most similar factually to the case at issue. In *Gushue,* the debtor did not file tax returns for the four years in question, and the Government therefore prepared substitute returns for those years on the debtor's behalf. The Government subsequently sent the debtor a Notice of Deficiency,

and the debtor contested the Notice by filing a petition in the United States Tax Court. Thereafter, the debtor and the Government reached an agreement regarding the debtor's liability, and a stipulated decision was entered by the Tax Court incorporating the agreement. The debtor later filed a chapter 7 bankruptcy case, and asserted in a dischargeability proceeding that his signed stipulation in the Tax Court was equivalent to a "return." *In re Gushue,* 126 B.R. at 203–04. The Court concluded that the stipulated decision did not qualify as a return, and that the debtor therefore had not filed a return within the meaning of § 523(a)(1)(B)(i). *Id.* at 204–05. The Court noted that provisions exist in the Internal Revenue Code which authorize the Government to prepare a substitute for return on behalf of taxpayers, and that those provisions are designed to benefit taxpayers who are cooperative after initially failing to file a Form 1040.

> An anomalous result would be reached if we were to rule that debtor, who failed to file his tax returns, did not cooperate with the IRS in preparing the substitute returns and then challenged the IRS' notice of deficiency in the United States Tax Court, is deemed to have filed his returns under 26 U.S.C. § 6020(a) and Revenue Ruling 74–203 simply because he settled his dispute with the IRS and signed a stipulated decision which was entered by the Tax Court.

*Id.* at 205. Since the debtor had not filed returns for the tax years at issue, the court determined that the debtor's tax liability for those years was nondischargeable.

More recently, the District Court in Tennessee was faced with similar facts and reached the same conclusion in *In re Gentry v. United States,* 223 B.R. 127 (M.D.Tenn.1998). In *Gentry,* the debtor had failed to file Form 1040 tax returns for 1979 and 1980. The Government prepared and executed substitute returns without the debtor's signature. The Government

subsequently sent a notice of deficiency to the debtor, accompanied by a form entitled "Consent to Assessment and Collection." The debtor did not sign the Consent, but instead filed a petition in the Tax Court seeking a redetermination of the deficiency. A second notice of deficiency was later sent to the debtor, which was also accompanied by a proposed consent to assessment and collection of the taxes. Again, the debtor declined to sign the consent form and instead filed a petition for redetermination in the Tax Court. *In re Gentry*, 223 B.R. at 128–29. The debtor ultimately entered into a settlement with the Government and agreed to the amounts claimed by the Government as a deficiency. The deficiencies were assessed against the debtor and, after the debtor was notified that tax liens were to be placed on his real property, the debtor signed the consent forms that originally had accompanied the notices of deficiency. The issue before the Court was whether the debtor had "filed returns," for purposes of a dischargeability action in bankruptcy, by signing the consent forms for assessment of his 1979 and 1980 taxes. *Id.* at 129.

The court in *Gentry* concluded that the debtor did not file constructive returns by filing the consent forms. *Id.* at 130. The court acknowledged that it could find that a constructive return had been filed if the debtor had cooperated with the Government in the auditing process, and if the debtor had agreed to the assessment of the taxes without contest, among other factors. *Id.* In *Gentry*, however, the court noted that the debtor was significantly less cooperative than the debtors in *Berard*, and that he did not sign the consent forms until after the Government had been required to undertake the time and expense of preparing substitute returns and defending its position is Tax Court in two separate proceedings. *Id.* at 131.

Given that these forms were submitted long after the IRS had completed its research regarding Debtor's unreported income, had prepared and executed sub-

stitute returns, had argued against Debtor in Tax Court, and had assessed Debtor for the monies owed, the Court finds that Debtor's filed forms were not "intended to act as a return for assessment and collection," and thus cannot be considered constructive returns. *Id.* at 130. Accordingly, the District Court agreed with the Bankruptcy Court that the debtor's cooperation with the Government "simply came too late." *Id.*

■ In this case, the Court likewise finds that the Debtor's efforts to resolve his tax concerns with the Government do not serve as a return for his 1989 taxes.

The Debtor admittedly did not file a Form 1040 tax return for the 1989 tax year, and did not initiate any contact with the Government regarding his tax liability for four years following the close of the tax year. The Government apparently learned of the Debtor's income from the Form 1099 filed by the company which employed the Debtor for a portion of the year, and unilaterally computed the Debtor's taxes for 1989. After the Debtor received a Notice of Deficiency regarding the unpaid income taxes, he elected to contest the claim and filed a Petition in the United States Tax Court seeking a redetermination of the taxes. The Government was then required to respond to the litigation, and referred the matter to an Appeals Officer to initiate settlement discussions.

■ The documents furnished to the Government by the Debtor in connection with the settlement discussions were cursory and incomplete. First, the Debtor never produced any documentation or statement to the Government whereby he disclosed all of the income that he received in 1989. Additionally, the Debtor never attested that the documents furnished to the Government accurately reflected all of his income for that year. (Transcript, pp. 53–54). The information furnished by the Debtor relates to only four months of 1989; however, the Debtor testified at the trial that although he did not work for three to

six months after the accident, he had "a couple odd jobs," and "was hired on a short-term basis to go to Trinidad and bring a boat back." (Transcript pp. 32–33). The disclosure of all income, from whatever source, is a fundamental element of an income tax return.

Additionally, the Debtor's primary contention in the Tax Court litigation was that he was entitled to claim certain deductions for ordinary and necessary business expenses incurred by him in 1989, and that the expenses included payments to the crew of the Tara M from the income that he received as captain of the ship. The Debtor produced no direct evidence to the Government of such payments to the members of the crew. Instead, the Debtor presented (1) the handwritten statements of a third party, with no personal knowledge of the events, that it was customary in the commercial fishing industry for a ship captain to control the wages of his crew; and (2) the Debtor's own brief affidavit that he paid an unspecified amount to various crewmembers, several of whom were not identified. The only other documentation supplied to the Government consisted of Tara M, Inc.'s Form 1099, and the Tara M, Inc. Trip Settlement, which simply sets forth the ship's expenses and wage advances by Tara M, Inc. to the crew.

The Debtor and the Government agreed to resolve the Tax Court litigation, and the Appeals Officer prepared an Audit Statement and proposed stipulated decision. The Debtor signed the proposed stipulated Decision, which finally established the amount of his tax liability for 1989, and the Decision was entered by the Tax Court.

Given these circumstances, the Court finds that the Debtor did not file an income tax return for the 1989 tax year within the meaning of § 523(a)(1)(B)(i) of the Bankruptcy Code. The Debtor never signed or submitted a document which disclosed all of the information from which his tax liability could be computed. *In re Berard*, 181 B.R. at 655. Specifically, the

Debtor never disclosed all of his income and all of his expenses for 1989. Further, the conduct of the Debtor did not relieve the Government of any statutory duties which it would otherwise be required to satisfy. *Id.* at 656. The Debtor did not furnish any information to the Government until after he had initiated litigation in the Tax Court, even though provisions are in place in the Internal Revenue Code to benefit taxpayers who initially failed to file a return, but who nevertheless wish to cooperate with the Internal Revenue Service. *In re Gushue*, 126 B.R. at 204–05. Consequently, the resolution was not reached until the Government had been forced to incur the expense of processing the Debtor's deficiency and defending its position in court. *In re Gentry,* 223 B.R. at 131. No prelitigation assent to the assessment of the taxes occurred in this case. Although the settlement ultimately resulted in a reduction of the Debtor's tax liability, the Debtor did not admit to his liability "without a fight." *Id.* at 132. In short, the Debtor did not cooperate with the Government in providing all of the information necessary to calculate his tax liability. *In re Parker*, 199 B.R. at 796.

In the circumstances of this case, the information supplied was not all of the information necessary to the calculation of any tax which might have been due for 1989, and could not reasonably have been intended as a return. The Court determines that the Debtor did not file a tax return for the 1989 tax year, and his tax liability for that year is therefore nondischargeable pursuant to § 523(a)(1)(B)(i) of the Bankruptcy Code.

Accordingly:

**IT IS ORDERED** that:

1. The Debtor's tax liabilities for 1983, 1984, 1985, 1986, 1987, 1988, and 1990 are determined to be dischargeable pursuant to § 727 of the Bankruptcy Code.

2. The Debtor's tax liability for 1989 is excepted from the Debtor's discharge pur-

suant to § 523(a)(1)(B)(i) of the Bankruptcy Code.

3. A separate final judgment shall be entered in accordance with this Opinion.