In re Paul C. WRIGHT, Debtor.

Paul C. Wright, Plaintiff.

v.

United States of America, Treasury Department, Internal Revenue Service Division, Defendant.

Bankruptcy No. 91–43546 TS. Adversary No. 98–4735 AT.

United States Bankruptcy Court, N.D. California, Oakland Division.

Jan. 4, 2000.

Morgan D. King, Law Offices of Morgan D. King, Dublin, CA, for Plaintiff.

Thomas R. Mackinson, Special Assistant United States Attorney, San Francisco, CA, for I.R.S.

## MEMORANDUM OF DECISION

LESLIE TCHAIKOVSKY, Bankruptcy Judge.

Plaintiff Paul C. Wright (the "Debtor") seeks a determination that his tax obligations to the defendant Internal Revenue Service (the "IRS") for 1978 through 1982 were discharged by his 1991 chapter 7 bankruptcy case. For the reasons stated below, the Court concludes that his tax penalties were discharged but that the principal and interest portions of his tax obligations were not. Judgment will be

entered in favor of the IRS in accordance with this decision.

## SUMMARY OF FACTS

The Debtor is a physician. During 1978 through 1982, and for some time thereafter, the Debtor was having both marital and business problems. As a result, although the Debtor had an accountant prepare joint federal tax returns for him and his wife for 1978 through 1982, neither he nor his wife signed the returns, and the returns were never filed with the IRS.

In 1984, the IRS conducted a criminal investigation with regard to the Debtor's failure to file tax returns for 1978 through 1982. In January 1984, special agents from the IRS criminal division visited the offices of the Debtor's accountant and obtained copies of the Debtor's and his wife's unsigned, unfiled returns (the "Prototype Returns"). In May 1984, the special agents deposed the Debtor under oath concerning his failure to file tax returns. They asked him questions about the sources of the figures set forth on the Prototype Returns. They also asked him why he had not signed and filed the returns on a timely basis. The special agents did not ask the Debtor to sign the Prototype Returns or advise the Debtor to file tax returns for the years in question.[1]

In June 1985, the Debtor was charged with four counts of willful failure to file tax returns: for 1978 through 1981. In September 1985, the Debtor pled guilty to two of the four counts, for 1980 and 1981; the remaining two counts were dismissed. The Debtor was sentenced to five years of probation which he served.

At trial in this adversary proceeding, the Debtor testified that his probation officer asked for copies of the Prototype Returns and that he provided copies to her. He testified that it was his recollection that his probation officer told him that she would file the Prototype Returns for him. She did not ask him to sign the Prototype Returns.

After the criminal case was concluded, the special agents' files were turned over to the IRS civil division for a civil closing. In November 1986, the case was assigned to Valerie Fintel ("Fintel"), a revenue agent. Fintel was given copies of all the documents obtained and notes prepared by the special agents from the criminal division. Included among these documents were copies of the Prototype Returns.

Beginning in December 1986, Fintel attempted to contact the Debtor to see if he had any additional information to provide concerning his tax liabilities for 1978 through 1982. In these letters, Fintel did not ask the Debtor to sign and file the Prototype Returns. The Debtor did not respond to Fintel's first two letters. As a consequence, Fintel prepared an examination report, setting forth her calculation of the Debtor's taxes for 1978 through 1982. Her figures mirrored in large part (although not entirely) the figures contained in the Prototype Returns.

In February 1987, Fintel was contacted by James Barbic ("Barbic"), a tax representative acting on the Debtor's behalf. Barbic challenged Fintel's calculation of the Debtor's tax liability on various grounds. After several phone calls, Fintel concluded that she would be unable to close the case on an agreed basis. Consequently, in June 1987, she prepared Substitute Tax Returns (the "Substitute Returns") for 1978 through 1982 and sent them to her Group Manager for review and filing.

The Substitute Returns were filed on April 11, 1988. As is customary with Sub-

---

1. The IRS called an "impeachment" witness, a supervisor from the criminal division of the IRS. He testified that a special agent from the criminal division would never ask a taxpayer to file a tax return during a criminal investigation. According to the witness, if an agent did so, it would be the end of the criminal case because it would constitute "strong arming" the taxpayer by threatening criminal prosecution in order to coerce payment of the civil tax liability.

stitute Returns, the Substitute Returns indicated a zero tax liability. Thereafter, on September 26, 1988, the IRS issued notices of tax deficiencies for 1978 through 1982 (the "Tax Deficiency Notices"). The Tax Deficiency Notices set forth the actual amounts of the Debtor's tax liabilities for 1978 through 1982 as calculated by Fintel.

On January 3, 1989, the Debtor filed two petitions in United States Tax Court (the "Tax Court Petitions") challenging the IRS's calculation of the tax deficiencies.[2] Stipulated judgments were entered in Tax Court with respect to both petitions on March 14, 1990 (the "Stipulated Judgments"). The Debtor filed a chapter 7 bankruptcy petition on June 4, 1991. Shortly thereafter, he received a discharge.

## DISCUSSION

Three issues are presented by this adversary proceeding: (1) whether the Debtor's tax liabilities for 1978 through 1982 are excepted from the discharge in his 1991 bankruptcy case pursuant to 11 U.S.C. § 523(a)(1)(B); (2) whether the IRS is equitably estopped from contending that the Debtor did not file tax returns more than two years before filing his bankruptcy petition; and (3) whether the penalties assessed with respect to the Debtor's 1978 through 1982 federal tax obligations were discharged in his 1991 chapter 7 bankruptcy case. Each of these issues is addressed below.

## A. ARE THE DEBTOR'S TAX LIABILITIES FOR 1978 THROUGH 1982 EXCEPTED FROM THE DISCHARGE IN HIS 1991 BANKRUPTCY CASE PURSUANT TO 11 U.S.C. § 523(a)(1)(B)?

The principal issue presented by this adversary proceeding is whether the principal and interest portions of the Debtor's tax liabilities for 1978 through 1982 are

excepted from the discharge in his 1991 chapter 7 bankruptcy case pursuant to 11 U.S.C. § 523(a)(1)(B). Section 523(a)(1)(B) provides as follows:

(a) A discharge under section 727 ... does not discharge an individual debtor from any debt—

(1) for a tax ... —

...

(B) with respect to which a return, if required—

(i) was not filed; or

(ii) was filed after the date on which such return was last due, under applicable law or under any extension, and after two years before the date of the filing of the petition. . . .

11 U.S.C. § 523(a)(1)(B). The Debtor does not contend that he filed tax returns for 1978 through 1982 in a conventional sense: i.e., by filing Form 1040s signed under penalty of perjury for the years in question. Rather, he contends that the IRS's possession of the Prototype Returns, containing substantially accurate information concerning his tax liabilities, coupled with his conduct in connection with the criminal prosecution, should be deemed to constitute the filing of tax returns for 1978 through 1982.

This argument must fail. The Prototype Returns do not qualify as tax returns. As set forth in *Beard v. Commissioner*, 82 T.C. 766, 1984 WL 15573 (1984), there are normally four requirements that a document must satisfy in order to constitute a valid tax return: (1) the document must contain sufficient data to permit the tax liability to be calculated; (2) it must purport to be a return; (3) it must represent an honest and reasonable attempt to satisfy the requirements of the tax law; and (4) it must be executed by the taxpayer under penalty of perjury.

---

**2.** One of the Tax Court Petitions dealt with the 1978 and 1979 taxes; the other dealt with

the 1980, 1981, and 1982 taxes.

■ Based on the evidence presented, the Court finds that the Debtor did not file tax returns that satisfied these four requirements during the criminal case. The Prototype Returns contained sufficient data to permit the tax liability to be calculated. They purported to be returns. They represented an honest and reasonable attempt to satisfy the requirements of the tax law. However, they were not signed by the Debtor, let alone signed under penalty of perjury. The only document signed by the Debtor was the plea admitting guilt for willful failure to file tax returns for 1980 and 1981. Additionally, the Prototype Returns were not filed by the Debtor. The fact that the IRS obtained possession of copies of the Prototype Returns as a result of its criminal investigation did not constitute their being filed with the IRS.[3]

Under certain circumstances, the IRS has recognized documents other than a Form 1040 as a valid tax return. In *Revenue Ruling* 74–203, 1974 WL 34901, the IRS stated that Form 870, Waiver of Restrictions on Assessment and Collection of Deficiency in Tax and Acceptance of Overassessment, Form 1902E, Report of Individual Income Tax Audit Changes, and Form 4549, Income Tax Audit Changes, if signed by a debtor, all qualify as tax returns within the meaning of 26 U.S.C. § 6020(a). The ruling states that: "Even though a document is not in the form prescribed for use as the appropriate return, it may constitute a return if it discloses the data from which the tax can be computed, is executed by the taxpayer, and is lodged with the Internal Revenue Service." *See In re Berard*, 181 B.R. 653 (Bankr.M.D.Fla.1995) (Form 4549 qualified as tax return); *In re Carapella*, 84 B.R. 779 (Bankr.M.D.Fla.1988) (Form 870 qualified as tax return).

Although none of the forms specified in the Revenue Ruling require the taxpayer

to sign under penalty of perjury, they are all executed under circumstances where the IRS has computed the taxpayer's tax liability. By signing the form, the taxpayer consents to the amounts so computed and permits the taxes to be immediately assessed without requiring the IRS to follow the notice of deficiency process. In this important respect, the effect of the taxpayer's signing these forms is the same as the effect of the debtor's filing a tax return.

Courts have also found that, by signing documents other than the forms specified above, a debtor effectively filed a tax return within the meaning of 11 U.S.C. § 523(a)(1)(B). For example, in *U.S. v. Ashe*, 228 B.R. 457 (C.D.Cal.1998), the court held that the debtor effectively filed a tax return within the meaning of 11 U.S.C. § 523(a)(1)(B) when, as here, the debtor signed a stipulated judgment in Tax Court. Similarly, in *In re Hatton*, 216 B.R. 278 (9th Cir. BAP 1997), the Ninth Circuit Bankruptcy Appellate Panel held that by meeting with the IRS and orally agreeing to the amounts of the deficiencies set forth in substitute returns and by signing an installment tax agreement which was approved by the IRS, a debtor effectively filed a tax return within the meaning of 11 U.S.C. § 523(a)(1)(B).

This liberal line of cases is not unbroken. For example, in *In re Gushue*, 126 B.R. 202 (Bankr.E.D.Pa.1991), the court refused to recognize a stipulated judgment in Tax Court as a return. The court stated that it would be "anomalous" to find that a "debtor, who failed to file his tax returns, did not cooperate with the IRS in preparing the substitute returns and then challenged the IRS' notice of deficiency in the United States Tax Court, is deemed to have filed his returns . . . simply because he settled his dispute with the IRS and signed a stipulated decision which was en-

---

**3.** *But see In re Elmore,* 165 B.R. 35 (Bankr. S.D.Ind.1994) (holding that debtor effectively filed tax returns by offering them into evidence in a tax court action challenging the IRS's claimed deficiencies).

tered by the Tax Court." *Id.*, 126 B.R. at 205.

■ The court agrees with the rationale of *Ashe* and *Hatton;* it disagrees with the punitive approach taken by the *Gushue* court. However, none of the cases cited above concludes that a debtor may file a tax return without signing some sort of document permitting the immediate assessment of the tax. Nothing that the Debtor did in connection with the criminal phase of his case had that effect. The IRS was not in a position to assess the Debtor's taxes until he signed the stipulated judgments in Tax Court in March 1989. At that point, the Court concludes, the Debtor effectively filed tax returns for 1978 through 1982. However, because he filed his bankruptcy petition less than two years later, his 1991 bankruptcy case did not discharge his tax liabilities for 1978 through 1982.[4]

## B. EQUITABLE ESTOPPEL

The Debtor contends that the IRS should be equitably estopped from asserting that he failed to file tax returns more than two years before filing his chapter 7 bankruptcy petition. *See* 11 U.S.C. § 523(a)(1)(B)(ii). The basis for this contention is the following conduct by the IRS and by other employees of the federal government:

1. Special agents from the criminal division of the IRS obtained copies of the Prototype Returns and questioned him under oath concerning those returns. They did not advise him that the Prototype Returns were not deemed "filed" as a result of the special agents' possession of them. Additionally, they did not advise the Debtor to file tax returns for 1978 through 1982.

2. The Debtor's probation officer asked him to supply her with copies of the Prototype Returns. He did so. The Debtor testified that it was his recollection that the probation officer promised to file the Prototype Returns for him. She did not ask him to sign the Prototype Returns.[5]

3. During the civil portion of the case, no one acting behalf of the IRS told him that he had not satisfied the requirement that he file tax returns for 1978 through 1982 nor advised him to file returns for those years.

■ As stated in *Lehman v. U.S.*, 154 F.3d 1010, 1016–17 (9th Cir.1998), *cert. denied*, 526 U.S. 1040, 119 S.Ct. 1336, 143 L.Ed.2d 500 (1999):

> Equitable estoppel focuses on the actions of the defendant. [Citation omitted.] The elements of equitable estoppel are that
>
> (1) the party to be estopped knows the facts, (2) he or she intends that his or her conduct will be acted on or must so act that the party invoking estoppel has a right to believe it is so intended, (3) the party invoking estoppel must be ignorant of the true facts, and (4) he or she must detrimentally rely on the former's conduct. When a

---

4. An argument might be made that the Debtor's tax liabilities for 1978 through 1982 were discharged by the Debtor's 1991 bankruptcy case because, by the time he filed his bankruptcy petition, returns for those years were not required. *See* 11 U.S.C. § 523(a)(1)(B)(i). In *In re Hindenlang*, 164 F.3d 1029 (6th Cir. 1999), the court held that a taxpayer could not file a tax return after the taxes had been assessed because filing a return could have no legal effect. On that basis, the *Hindenlang* court held that the taxes were permanently barred from the bankruptcy discharge. However, if the *Hindenlang* court's initial holding is correct, it seems more logical to conclude

that, at that point, a tax return is not required. However, the Debtor failed to make this argument at trial; therefore, the IRS has not had a chance to address it. The Court declines to raise the issue sua sponte particularly given the fact that the Ninth Circuit Bankruptcy Appellate Panel has held that a tax return may be filed after the taxes have been assessed. *See In re Nunez*, 232 B.R. 778 (9th Cir. BAP 1999).

5. The probation officer was not an IRS employee. However, she presumably was an employee of the federal government.

party seeks to invoke equitable estoppel against the government, we additionally require a showing that the agency engaged in "affirmative conduct going beyond mere negligence" and that "the public's interest will not suffer undue damage" as a result of the application of this doctrine.

*United States v. Hemmen,* 51 F.3d 883, 892 (9th Cir.1995) (citations omitted).

However, a finding of equitable estoppel against the government ". . . does not require [a finding] that the government intend to mislead a party." *Watkins v. U.S. Army,* 875 F.2d 699, 707 (9th Cir.1989).

■ The evidence adduced at trial, as summarized above, does not support the conclusion that the IRS should be equitably estopped from contending that the Debtor did not file tax returns for 1978 through 1982. No evidence was presented that the special agents misled the Debtor in any fashion concerning the unfiled status of the Prototype Returns. Although they failed to advise the Debtor that he should file tax returns for 1978 through 1982, they had no duty to do so. To the contrary, to do so would have violated IRS policy and been contrary to the interests of the IRS. Silence may be grounds for estoppel only where the circumstances give rise to a duty to speak. *See U.S. v. Hemmen,* 51 F.3d 883, 892 (9th Cir.1995). The special agents had no duty to speak under these circumstances.

The only affirmative conduct that could arguably support an equitable estoppel theory was the probation officer's purported promise to file the Prototype Returns for the Debtor. The Court found the evidence that the probation officer made this promise unpersuasive. The Debtor's recollection of her having done so was vague and uncertain. If the probation officer did in fact tell the Debtor that she would "file" the Prototype Returns, it is more likely that she meant that she would place the Prototype Returns in the Debtor's probation file. The Court also finds that, under these circumstances, the federal govern-

ment should not be treated as a single entity.

Moreover, from 1987 to the date he filed his bankruptcy petition, the Debtor could not have reasonably believed that the Prototype Returns had been filed. In 1987, Fintel advised Barbic, the Debtor's tax representative, that the Debtor had not filed tax returns for 1978 through 1982. Moreover, in the Tax Petitions, the Debtor stated as follows in paragraph 5a: "United States Individual Income Tax Returns for the years . . . [in question] have not been filed by the petitioner; . . . ." For all of these reasons, the Debtor's equitable estoppel argument must fail.

## C. TAX PENALTIES

■ The Stipulated Judgments included tax penalties for each year from 1978 through 1982 pursuant to 26 U.S.C. § 6653(a) Section 6653(a) provides for a 5% penalty on any underpayment of tax due to the taxpayer's negligence. Section 523(a)(7) of the Bankruptcy Code provides that a chapter 7 case does not discharge an individual of liability for:

> a . . . penalty . . . payable to and for the benefit of a governmental unit . . . [that] is not compensation for actual pecuniary loss, **other than a tax penalty—**
>
> (A) relating to a tax of a kind not specified in paragraph (1) of this subsection; or
>
> (B) **imposed with respect to a transaction or event that occurred before three years before the date of the filing of the petition.**

11 U.S.C. § 523(a)(7) (emphasis added).

The Debtor contends that, by negative implication, 11 U.S.C. § 523(a)(7) provides that a chapter 7 discharge discharges an individual from liability for a tax penalty imposed with respect to a transaction that occurred more than three years before the petition date. This reading of the statute appears correct.

If the transactions are viewed as the taxable events, in this case, the tax penal-

ties were imposed with respect to transactions that occurred in 1978 through 1982. If the transactions are viewed as the failure to file tax returns when due, the tax penalties were imposed with respect to transactions that occurred from 1979 through 1983. The Debtor's bankruptcy petition was not filed until 1991. Under either view, by this time, the transactions were more than three years old. As a result, the tax penalties were discharged in the Debtor's 1991 chapter 7 bankruptcy case. *See McKay v. U.S.*, 957 F.2d 689, 693–94 (9th Cir.1992).

## CONCLUSION

The Debtor's conduct during the criminal investigation and his prosecution for willful failure to file tax returns for 1978 through 1982 did not qualify as filing tax returns. By signing stipulated judgments in the Tax Court establishing his tax liabilities for those years, he did effectively file tax returns. However, because he signed those judgments less than two years before filing his 1991 bankruptcy petition, the principal and interest portions of the tax liabilities are excepted from the discharge under 11 U.S.C. § 523(a)(1)(B)(ii).

The IRS is not equitably estopped from contending that the Debtor's tax liabilities for those years are excepted from his bankruptcy discharge. The IRS agents did nothing to mislead the Debtor into thinking that his tax returns were filed, and the Debtor was not misled. The Debtor also failed to establish that his probation officer misled him. In any event, the Court would not attribute her conduct to the IRS. Finally, the tax penalties imposed pursuant to the Stipulated Judgments were discharged in the Debtor's 1991 bankruptcy case since they related to transactions that occurred more than three years before the bankruptcy petition date.