**In re James H. HATTON Debtor.**

**United States of America, Appellant,**

**v.**

**James H. Hatton, Appellee.**

**No. 98–35248.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 13, 1999

Filed Aug. 10, 2000

Kenneth L. Greene, AUSA, Washington, D.C., for the appellant.

Christopher E. Allen, Esq., Tacoma, Washington, for the appellee.

Before: CANBY, BRUNETTI, and O'SCANNLAIN, Circuit Judges.

BRUNETTI, Circuit Judge:

James Hatton ("Hatton") failed to file a federal income tax return in 1983, and the Internal Revenue Service ("IRS") instead prepared a substitute return on his behalf. Hatton then entered into an installment agreement with the IRS, agreeing to tender $200 per month in order to fulfill his outstanding tax liabilities. Before Hatton completed all the payments in the installment agreement, he filed a Chapter 7 bankruptcy petition. The IRS filed a proof of claim in order to recover the remaining unpaid sums under the installment agreement. In response, Hatton filed a motion for an adversary proceeding in order to prove that his tax liabilities should be discharged in bankruptcy. The bankruptcy court agreed and granted summary judgment in favor of Hatton, concluding that Hatton's unpaid tax liabilities were eligible for discharge under section 727 of the Bankruptcy Code. 11 U.S.C. § 727. The Bankruptcy Appellate Panel ("BAP") affirmed the bankruptcy court. We have jurisdiction under 28 U.S.C. § 158(d), and we reverse.

I.

On July 15, 1994, Hatton filed a Chapter 7 bankruptcy petition. In the debt schedules accompanying the petition, Hatton listed his overdue federal tax liabilities for 1983 through 1985 and 1988 through 1990. Although Hatton received a discharge, the IRS still sought to recover the unpaid tax liabilities for the years listed on Hatton's

debt schedules. The IRS ultimately admitted that the tax liabilities for all years except 1983 were dischargeable. The IRS alleged, however, that the 1983 liabilities were not discharged, and that, because its claim for the 1983 tax year was secured, it could proceed against Hatton's exempt and abandoned property. Hatton then filed a motion for summary judgment, arguing that his tax liabilities, including those incurred in 1983, were discharged in bankruptcy. The government opposed Hatton's motion, arguing that Hatton's 1983 tax liabilities were nondischargeable under 11 U.S.C. § 523(a)(1)(B)(i) because Hatton never filed a tax return for the 1983 tax year. The relevant facts surrounding the motion are not in dispute.

Hatton failed to file a federal income tax return for the 1983 tax year. As a result, the IRS prepared a substitute return on Hatton's behalf pursuant to section 6020(b) of the Internal Revenue Code ("I.R.C."). 26 U.S.C. § 6020(b). The IRS completed the substitute tax return based on information it had obtained from sources other than Hatton. The IRS determined that Hatton had an unpaid tax liability of $2,792 and additions to tax totaling $1,043.

Following the completion of the substitute return, the IRS sent Hatton a notice of deficiency, but Hatton failed to respond. The IRS then assessed the tax deficiency on January 12, 1987, and sent Hatton a notice of assessment and demand for payment. When Hatton failed to pay any of the assessed amounts, the IRS filed a notice of lien against Hatton's property.

During the course of the delinquency investigation, the IRS sent Hatton delinquency notices on at least three occasions, but Hatton failed to respond in any way. In an attempt to recover the unpaid taxes, the IRS then sent a letter to Hatton proposing a meeting with IRS officials to discuss his tax liabilities. The letter informed Hatton that a failure to attend the meeting could result in a levy against his wages and bank accounts and a seizure of his property. Consequently, Hatton and his attorneys finally met with an IRS officer on December 13, 1991.

Although Hatton did not dispute the IRS' computation of his 1983 tax liabilities, no agreement was reached at the initial meeting. After extensive negotiations between the IRS and Hatton, the parties executed and signed an installment agreement. The agreement provided that Hatton would pay $200 a month until his tax liabilities were paid in full. Hatton complied with the terms of the installment agreement and continued to make his $200 monthly payments until he filed his Chapter 7 bankruptcy petition on July 15, 1994.

After examining the relevant facts, the bankruptcy court granted Hatton's motion for summary judgment, concluding that Hatton's tax liabilities were dischargeable under 11 U.S.C. § 727. The BAP affirmed, reasoning that Hatton had filed a tax "return" as that term is defined under section 523(a)(1)(B)(i) because the IRS had prepared a substitute return and Hatton had cooperated with the government in executing the installment agreement. *See United States v. Hatton (In re Hatton)*, 216 B.R. 278, 283 (9th Cir. BAP 1997). The United States appeals from the BAP's decision.

## II.

The only question on appeal is whether the substitute return prepared by the IRS, the installment agreement signed by Hatton, or a combination of both, constitute a tax "return" under 11 U.S.C. § 523(a)(1)(B)(i). Because we are in as good a position as the BAP to review bankruptcy court rulings, we independently examine the bankruptcy court's decision, reviewing the bankruptcy court's interpretation of the Bankruptcy Code de novo and its factual findings for clear error. *See Quarre v. Saylor (In re Saylor)*, 108 F.3d 219, 220 (9th Cir.1997).

### A.

The general rule is that a debtor who files a Chapter 7 bankruptcy petition

is discharged from personal liability for all debts incurred before the filing of the petition, including those related to unpaid taxes. *See* 11 U.S.C. § 727(b). The Bankruptcy Code, however, lists several exceptions to the general rule of dischargeability. Section 523(a)(1) of the Bankruptcy Code provides such an exception, and controls whether unpaid taxes are dischargeable in bankruptcy. That provision provides:

(a) A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt–

(1) for a tax or a customs duty–

(A) of the kind and for the periods specified in section 507(a)(2) ˙ or 507(a)(8) of this title, whether or not a claim for such tax was filed or allowed;

(B) with respect to which a return, if required–

(i) was not filed; or

(ii) was filed after the date on which such return was last due, under applicable law or under any extension, and after two years before the date of the filing of the petition; or

(C) with respect to which the debtor made a fraudulent return or willfully attempted in any manner to evade or defeat such a tax.

11 U.S.C. § 523(a)(1). Section 523, therefore, "excepts from the Bankruptcy Code's discharge provisions a tax liability debt if: (1) the tax underlying the tax liability debt required a ˙return; and (2) the debtor failed to file the required return." *California Franchise Tax Bd. v. Jackson (In re Jackson)*, 184 F.3d 1046, 1050 (9th Cir. 1999). In *Jackson*, ˙ this Court recognized the purpose behind section 523(a)(1)—"a debtor should not be permitted to discharge a tax liability based upon a required tax return that was never filed." *Id.* at 1052 (quoting 3 William L. Norton, Jr., *Norton Bankruptcy Law and Practice 2d* § 47:6, 47–15 (1997)). We also recognized in ˙*Jackson* that the term "return" should be given a strict construction and

interpreted in accordance with its ordinary meaning. *See id.* at 1051.

■ The Bankruptcy Code does not define the term "return." In differentiating a "return" from a report of reassessment in *Jackson*, we found it necessary to go no further than Webster's dictionary: "A return is 'a formal statement on a required legal form showing taxable income, allowable deductions and exemptions and the computation. of the tax due.'" *Id.* (quoting *Webster's · Ninth New Collegiate Dictionary* 1008 (1985)). This definition closely mirrors the accepted meaning of "return" under the I.R.C., and every other Circuit that has considered the question has also relied on the I.R.C. to define the term under section 523(a)(1) of the Bankruptcy Code. *See United States v. Hindenlang (In re Hindenlang)*, 164 F.3d 1029, 1032 (6th Cir.) ("We think it is appropriate to look to the Internal Revenue Code to determine the proper definition of return."), *cert. denied,* —— U.S. ——, 120 S.Ct. 41, 145 L.Ed.2d 37 (1999); *Bergstrom v. United States (In re Bergstrom)*, 949 F.2d 341, 343 (10th Cir.1991) (relying on the definition of "return" under the I.R.C. in determining whether a substitute return is sufficient to satisfy section 523(a)(1)(B)(i)). Because the Bankruptcy Code uses the term "return" without providing a definition and there is no reason to presume that Congress intended the term to have a different meaning under the Bankruptcy Code than under the I.R.C., we adopt the tax definition in determining whether Hatton's tax liabilities are dischargeable.

■ Although the I.R.C. does not provide a statutory definition of "return," the Tax Court developed a widely-accepted interpretation of that term in *Beard v. Commissioner,* 82 T.C. 766, 1984 WL 15573 (1984), *aff'd,* 793 F.2d 139 (6th Cir.1986). In order for a document to qualify as a return: "(1) it must purport to be a return; (2) it must be executed under penalty of perjury; (3) it must contain sufficient data to allow calculation of tax; and (4) it must represent an honest and reasonable at-

tempt to satisfy the requirements of the tax law." *Hindenlang,* 164 F.3d at 1033 (citing definition of "return" in *Beard*); *Beard,* 82 T.C. at 767. The *Beard* definition was derived from two Supreme Court cases, *Germantown Trust Co. v. Commissioner,* 309 U.S. 304, 60 S.Ct. 566, 84 L.Ed. 770 (1940) and *Zellerbach Paper Co. v. Helvering,* 293 U.S. 172, 55 S.Ct. 127, 79 L.Ed. 264 (1934), and provides a sound approach under both the Bankruptcy Code and the I.R.C. Furthermore, the *Beard* definition is consistent with the purpose of a return, which is not only to get tax information in some form, but "to get it with such uniformity, completeness, and arrangement that the physical task of handling and verifying returns may be readily accomplished." *Commissioner v. Lane–Wells Co.,* 321 U.S. 219, 223, 64 S.Ct. 511, 88 L.Ed. 684 (1944). The underlying question, therefore, is whether the installment agreement and the substitute return satisfy the *Beard* factors and thus constitute the filing of a return under 11 U.S.C. § 523(a)(1)(B)(i).

### B.

 The installment agreement and the substitute return fail to qualify as a return under *Beard.* First, neither document was signed under the penalty of perjury. The substitute return was never signed by Hatton, and although the installment agreement contains Hatton's signature, his signature was not provided under the penalty of perjury. *See Bergstrom,* 949 F.2d at 343 (recognizing that under 26 U.S.C. § 6020(a), a substitute return must be signed before it can be accepted as the filed return of a taxpayer). Therefore, under *Beard,* Hatton failed to file a tax return.

Second, neither the installment agreement nor the substitute return represent an honest and reasonable attempt to satisfy the requirements of the tax law. It is undisputed that Hatton failed to file a federal tax return on his own initiative for the 1983 tax year as required by section 6012 of the I.R.C. *See* 26 U.S.C. § 6012(a)(1)(A). It is also undisputed that

Hatton never attempted to cure this failure until after the IRS had assessed his tax deficiency and initiated a delinquency investigation. It was only after the IRS threatened to levy his wages and bank account and seize his personal property that Hatton elected to cooperate with the IRS. Moreover, even after Hatton finally responded to the notices sent by the IRS, it still took months of negotiations before the IRS and Hatton could agree on a settlement that ultimately resulted in the installment agreement.

The BAP excused Hatton's failure to file a return because he "cooperated with the IRS, accepted his tax assessed liability without objection, signed the Installment Agreement to pay his tax liability, and performed his obligations under the Installment Agreement over a 23–month period." *Hatton,* 216 B.R. at 283. Hatton's belated acceptance of responsibility, however, does not constitute an honest and reasonable attempt to comply with the requirements of the tax law. Instead, Hatton made every attempt to avoid paying his taxes until the IRS left him with no other choice. Because Hatton never filed a return and only cooperated with the IRS once collection became inevitable, the bankruptcy court erred in concluding that section 523 did not except Hatton's tax liability from discharge.

### III.

Accordingly, because Hatton's tax liability for the 1983 tax year is a result of his failure to file a tax return under section 523(a)(1)(B)(i), Hatton's tax liability is not dischargeable in bankruptcy.

**REVERSED.**