**In the Matter of Philip T. HETZLER, Debtor,**

**Philip T. Hetzler, Plaintiff,**

v.

**United States of America, Internal Revenue Service, Defendant.**

Bankruptcy No. 99–20523/JHW. Adversary No. 00–1018.

United States Bankruptcy Court, D. New Jersey.

March 12, 2001.

Charles T. Eckel, Egg Harbor Township, NJ, for Debtor.

Richard G. Jacobus, U.S. Department of Justice, Washington, DC, for Internal Revenue Service.

## OPINION

JUDITH H. WIZMUR, Bankruptcy Judge.

We have before the court for resolution competing motions for summary judgment on the question of the dischargeability of certain delinquent federal income taxes owed by the debtor. The debtor seeks to discharge the taxes in question pursuant to 11 U.S.C. § 523(a)(1)(B), contending that the taxes relate to tax returns that he filed

over two years prior to his bankruptcy filing. The IRS disagrees, and maintains that the debtor's untimely filed 1040 Forms do not qualify as "returns" for purposes of § 523(a)(1)(B) because they had no effect on his tax liabilities for those years; the documents simply mirrored the assessments already prepared by the IRS. We resolve this matter below.

### FACTS

On December 2, 1999, Philip T. Hetzler filed a petition for relief under Chapter 7 of the Bankruptcy Code. The debtor scheduled as his only debt, $162,871.00 in unsecured priority taxes owed to the IRS for the tax years 1988 through 1992 and 1996.[1] The debtor's case was classified as a no-asset Chapter 7 case, and he received his discharge on May 1, 2000. In the interim, on January 18, 2000, the debtor filed this adversary complaint challenging the nondischargeability of the federal income taxes he scheduled as due to the IRS for the 1988 through 1992 and the 1996 tax years. The parties have agreed that the 1992 taxes due are dischargeable, and that the 1996 taxes and interest due are not dischargeable. The parties have also agreed that pre-petition civil penalties imposed by the IRS with respect to the debtor's tax obligations for 1988 through 1992 are dischargeable. Remaining to be resolved is the dischargeability of debtor's tax obligations for 1988, 1989, 1990 and 1991.[2]

The debtor submits that prior to the 1988 tax year, he had been working on a salary and commission basis under which his employer withheld federal income taxes. For the tax years of 1988 through 1991, he was employed on a straight commission basis, and his employer did not withhold any taxes. The debtor claims that this led to confusion and difficulty on his part in meeting his tax obligations, and as a result, he failed to timely file his federal income tax returns. The debtor explains that he was not familiar with the requirements of filing estimated tax returns and by the time he realized what was happening, he owed such a substantial amount of taxes that he did not have the ability to make payment.

The IRS sent written inquiries to the debtor in June and July of 1993, but did not receive a response.[3] The IRS then prepared substituted tax returns ("SFRs") for the 1988 through 1991 tax years, in April and May of 1994, pursuant to 26 U.S.C. § 6020(b).[4] The debtor did not participate in this process and did not sign the substituted returns. Based on the SFRs and an examination report prepared by the tax auditor assigned to the debtor's case, the IRS imposed income tax assessments for each of the years that returns were not filed.

Approximately three years later, in April and May 1997, the debtor filed 1040 Forms purporting to be his delinquent federal income tax returns. The 1989, 1990 and 1991 returns were filed on April 25, 1997, and the 1988 return was filed on May 2, 1997. Following is a chart comparing

---

1. The debtor later amended his schedules to include an unrelated unsecured claim in the amount of $500.

2. The IRS acknowledges that for tax year 1991, the additional assessment of $237 resulting from the filing of debtor's 1040 form in 1997 is dischargeable.

3. The debtor points out that the inquiries were sent to his former address, at which he only lived for a short period of time in 1991. Notice is sufficient, however, where the IRS serves the taxpayer at his last known address. See 26 U.S.C. § 6212(b).

4. The 1988, 1990 and 1991 assessments were made on April 25, 1994. The 1989 assessment was made on May 16, 1994.

the IRS assessment and tax calculations, and the debtor's self-assessment and tax calculations.

| Tax Year | Taxable Income | | Assessment | |
| --- | --- | --- | --- | --- |
| | IRS Assessment (1994) | Debtor's 1040 (1997) | IRS Calculation (1994) | Debtor's Self-Assessment (1997) |
| 1988 | $52,296 | $52,296 | $18,639 | $19,038 |
| 1989 | $59,656 | $59,656 | $21,280 | $21,280 |
| 1990 | $26,623 | $26,624 | $ 9,780 | $ 9,781 |
| 1991 | $17,479 | $18,532 | $ 2,438 | $ 2,675 |

The chart reflects that the debtor's taxable income in each of the tax years except 1991 is identical in both the IRS assessment and the debtor's 1040 Form, with minor variation in the calculation of tax liability based on the taxable income. No additional assessment was imposed by the IRS for 1988, because the IRS contends that the debtor miscalculated the tax liability on his taxable income for that year.

On April 15, 1997, the debtor timely filed his federal income tax return for the 1996 tax year, showing an income tax liability of $1,877, which remains unpaid. In June 1997, Hetzler entered into an Installment Agreement with the IRS, and made regular payments under the agreement of $140 per month for approximately 28 months. In May 1999, the IRS abated $458 of the debtor's 1988 taxes, apparently based on an overpayment of 1998 taxes. In late 1997, the debtor was assessed an additional tax of $237 based on his late filed 1991 tax return. In 1998, the debtor attempted unsuccessfully to submit an offer in compromise to the IRS.

## DISCUSSION

On these competing motions for summary judgment, the precise question before the court is whether the 1040 Forms filed by the debtor in April and May of 1997 for the 1988 through 1991 tax years qualify as "returns" for purposes of 11 U.S.C. § 523(a)(1)(B).[5] If we conclude that the debtor's 1997 filings do not constitute returns for purposes of § 523(a)(1)(B), then the debtor's tax liabilities for the 1988 through 1991 tax years would be nondischargeable under § 523(a)(1)(B)(i). If the debtor's filings do constitute returns for purposes of § 523(a)(1)(B), the debtor's tax liabilities for the 1988 through 1991 tax years would be dischargeable under § 523(a)(1)(B)(ii).

The Code does not define a "return" under section 523. Most courts

5. Section 523(a)(1)(B) provides:
(a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—
(1) for a tax or a customs duty—
...
(B) with respect to which a return, if required—

(i) was not filed; or
(ii) was filed after the date on which such return was last due, under applicable law or under any extension, and after two years before the date of the filing of the petition.
11 U.S.C. § 523.

agree that a document must first qualify as a return under federal income tax law in order to qualify as a return for purposes of section 523. *See, e.g., In re Hatton,* 220 F.3d 1057, 1060 (9th Cir.2000); *In re Hindenlang,* 164 F.3d 1029, 1032–33 (6th Cir. 1999); *In re Bergstrom,* 949 F.2d 341, 343 (10th Cir.1991); *In re Mathis,* 249 B.R. 324 (S.D.Fla.2000). Courts commonly look to four factors in determining whether a document filed with the IRS qualifies as a "return". The document must: (1) purport to be a return; (2) be executed by the debtor under penalty of perjury; (3) contain sufficient data to allow the calculation of the tax liability, and (4) represent an honest and reasonable attempt on the part of the taxpayer to satisfy the requirements of the tax law. *See, e.g., In re Hatton,* 220 F.3d at 1060–61 (citing to *Beard v. Commissioner,* 82 T.C. 766, 777–78, 1984 WL 15573 (1984), *aff'd,* 793 F.2d 139 (6th Cir. 1986)); *In re Hindenlang,* 164 F.3d at 1033 (same); *In re Pierchoski,* 243 B.R. 639, 642 (Bankr.W.D.Pa.1999); *In re Billman,* 221 B.R. 281, 282 (Bankr.S.D.Fla. 1998). The parties agree that the first three factors are satisfied by the debtor's filing of his 1040 Forms for the tax years 1988 through 1991. The dispute is over the application of the fourth factor.

■ The IRS contends that the debtor has failed to make a bona fide attempt to timely self assess his income tax liability for the tax years at issue. The IRS maintains that the debtor's 1988 through 1990 returns were legal nullities because they merely restated the tax liabilities previously assessed for such years, and "had zero effect upon his tax liabilities for such years." Because the debtor's "belated, post-assessment attempt to file what purported to be his 1988, 1989 and 1990 tax returns ... served no tax purpose under the Internal Revenue Code," his taxes for those years cannot be rendered dischargeable. The IRS contends that the same argument holds true for the 1991 tax year, except to the extent of the additional tax of $237.00. In support of its position the IRS directs our attention to *In re Hindenlang,* 164 F.3d 1029 (6th Cir.1999).

In *Hindenlang,* the Chapter 7 debtor sought to discharge certain federal tax liabilities for which he had filed late tax returns. *In re Hindenlang,* 164 F.3d 1029 (6th Cir.), *cert. denied,* 528 U.S. 810, 120 S.Ct. 41, 145 L.Ed.2d 37 (1999). Hindenlang had failed to file his federal tax returns for the tax years 1985 through 1988. The IRS sent Hindenlang notices of proposed deficiency for those tax years, with no response, followed by substituted returns and then formal notice of deficiency letters. The IRS then assessed the deficiencies against Hindenlang. Two years after the assessment, Hindenlang prepared and sent to the IRS 1040 Forms for the tax years in question, calculating the taxes to be substantially the same as in the substituted returns. The deficiencies were not paid. Three years later, the debtor filed for bankruptcy under Chapter 7 and sought to discharge his tax liabilities for the 1985 to 1988 tax years. The bankruptcy court granted the debtor's motion. The district court affirmed. The Sixth Circuit focused on the question of "whether Forms 1040 filed after the IRS has made an assessment can constitute returns for purposes of § 523(a)(1)(B)." *Id.* at 1032.

Beginning with the premise that the definition of a return is governed by applicable tax law, the Sixth Circuit applied the four part *"Beard"* test described above, focusing on the fourth criterion, whether the return represents "an honest and reasonable attempt to satisfy the requirements of the tax law." *Id.* at 1033.

Reversing the district court, the Sixth Circuit held as a matter of law:

that a Form 1040 is not a return if it no longer serves any tax purpose or has any effect under the Internal Revenue Code. A purported return filed too late to have any effect at all under the Internal Revenue Code cannot constitute "an honest and reasonable attempt to satisfy the requirements of the tax law." Once the government shows that a Form 1040 submitted after an assessment can serve no purpose under the tax law, the government has met its burden.

*Id.* at 1034. "[W]hen the debtor has failed to respond to both the thirty-day and the ninety-day deficiency letters sent by the IRS, and the government has assessed the deficiency, then the Forms 1040 serve no tax purpose, and the government thereby has met its burden of showing that the debtor's actions were not an honest and reasonable effort to satisfy the tax law." *Id.* at 1034–35. "Nothing in § 523(a)(1) of the Bankruptcy Code suggests that a document that does not qualify as a return under the Internal Revenue Code should nonetheless qualify as a return for purposes of bankruptcy discharge." *Id.* at 1035. *See also In re Pierchoski,* 243 B.R. 267 (W.D.Pa.1999) (adopting *Hindenlang* ); *In re Mickens,* 214 B.R. 976 (N.D.Ohio 1997), *aff'd,* 173 F.3d 855, 1999 WL 98369 (6th Cir. Jan.29, 1999); *In re Pierchoski,* 243 B.R. 639 (Bankr.W.D.Pa.1999) (applying *Hindenlang* ). *But see, e.g., In re Elmore,* 165 B.R. 35 (Bankr.S.D.Ind.1994); *In re Lowrie,* 162 B.R. 864 (Bankr.D.Nev. 1994).

The debtor asks that we not follow the "tortured logic of *Hindenlang* ", but instead urges the court to accept the rationale espoused in *In re Nunez,* 232 B.R. 778 (9th Cir. BAP 1999) and *In re Hatton,* 216 B.R. 278 (9th Cir. BAP 1997). In *Nunez,* the debtor failed to file his federal tax returns for the 1985–87 and 1989 tax years. The IRS prepared substituted returns and assessed delinquent taxes against the debtor between 1990 and 1993. In 1994, the debtor submitted 1040 Forms for the tax years in question, reflecting the same income as the substituted returns. The debtor made two Offers of Compromise, but neither was accepted. In 1997, the debtor filed a Chapter 7 petition and a complaint to discharge his tax debt. The bankruptcy court concluded that the debtor's 1040 Forms constituted tax returns for purposes of section 523, and that the taxes due were dischargeable.

Relying in part on the previous Ninth Circuit Bankruptcy Appellate Panel ("BAP") decision in *Hatton,* the *Nunez* BAP affirmed, concluding that Congress did not condition the discharge of tax debt on whether a return was filed prior to an assessment. Congress had used assessment as a trigger in other provisions of the Code, namely section 507(a)(8)(A)(ii). The BAP declined to "read into Section 523(a)(1)(B) the requirement that a debtor must have filed a return prior to an assessment by the IRS." 232 B.R. at 782.

On the issue of a debtor's honest and reasonable attempt to comply with the tax laws, which the panel characterized as a "good faith" inquiry, the panel moved away from a "broad, in-depth inquiry into the debtor's compliance with all tax laws" to a requirement that the document " 'appear on its face to constitute an honest and genuine endeavor to satisfy the law.' " *Id.* at 783 (quoting *In re Savage,* 218 B.R. 126, 132 (10th Cir. BAP 1998)). The panel explained:

The good faith inquiry under Section 523(a)(1)(B) should focus on the debtor's intent at the time the returns are filed. This keeps the inquiry relevant to Section 523(a)(1)(B). A focus on the delay in filing, or the number of missed years is relevant instead to an inquiry under

Section 523(a)(1)(C) [fraudulent return or willful attempt to evade a tax]....

Additionally, the issue of good faith generally should arise only where the creditor contends that the form of the document is not proper.

*Id.* at 783. *See also In re Crawley,* 244 B.R. 121 (Bankr.N.D.Ill.2000)

The debtor's reliance on the Ninth Circuit BAP decisions in *Hatton* and *Nunez* is now substantially weakened by the Ninth Circuit's recent reversal of the *Hatton* decision on August 10, 2000 in *In re Hatton,* 220 F.3d 1057 (9th Cir.2000). In *Hatton,* the debtor failed to file his federal tax return for the 1983 tax year. The IRS prepared a substituted return and Hatton entered into an installment agreement with the IRS. Before all of the payments were completed, Hatton filed for bankruptcy and sought to discharge his remaining tax liabilities. The bankruptcy court granted the debtor summary judgment and the Bankruptcy Appellate Panel affirmed. *Id.* at 1058. The Ninth Circuit reversed, concluding that the installment agreement and the substituted return both failed to qualify as a "return" because neither document was signed under penalty of perjury and the SFR was not signed by the taxpayer at all. *Id.* at 1061. Moreover, neither document satisfied the requirement of "an honest and reasonable attempt to satisfy the requirements of the tax law." *Id.* The Circuit reasoned:

> that Hatton never attempted to cure this failure until after the IRS had assessed his tax deficiency and initiated a delinquency investigation. It was only after the IRS threatened to levy his wages and bank account and seize his personal property that Hatton elected to cooperate with the IRS. Moreover, even after Hatton finally responded to the notices sent by the IRS, it still took months of negotiations before the IRS and Hatton

could agree on a settlement that ultimately resulted in the installment agreement.

*Id.* Because "Hatton made every attempt to avoid paying his taxes until the IRS left him with no other choice," the Ninth Circuit held that his tax liability was nondischargeable. *Id.*

Applying what appears to be the weight of authority, at least on the Court of Appeals level, to this case, I conclude that, as a matter of law, the IRS has met its burden to establish that the 1040 forms filed by the debtor in 1997, for the tax years 1988 through 1991, did not represent an honest and reasonable attempt to comply with tax laws, and do not constitute "returns" for § 523 purposes. The forms were filed three years after the IRS issued assessments for the years in question, and substantially mirrored the information in the assessments. The returns served no tax purpose and had no effect under the Internal Revenue Code.

I readily understand the argument that § 523(a)(1)(B)(i) does not base the discharge of taxes on whether a return was filed prior to assessment. Nor does subsection (B)(ii) include any language concerning the assessment of the tax, but sets out a bright line two-year rule for filing returns which a debtor must observe to gain discharge of his/her taxes. Nevertheless, a determination that filing a 1040 Form after assessment, particularly where the information contained in the form restates the information in the assessment and furthers no tax purpose, affirms substance over form. The purpose of a tax return is to receive information from taxpayers " 'with such uniformity, completeness, and arrangement that the physical task of handling and verifying returns may be readily accomplished.' " *In re Hindenlang,* 164 F.3d at 1033 (quoting *Commissioner v. Lane–Wells Co.,* 321 U.S. 219,

223, 64 S.Ct. 511, 88 L.Ed. 684 (1944)). Our system of self-assessment requires prompt reporting from tax payers without the government's prior determination of tax liability. *Id.* Where such self-assessment has not occurred, and the government is required to make its own assessment, the subsequent duplication of the government's assessment by the taxpayer may be considered a nullity.

■ Even though the government has met its threshold burden to establish that no "return" was filed, a debtor may successfully assert that he has made an honest and reasonable attempt to comply with the tax laws, even after assessment, by providing sufficient facts to substantiate such an effort. For instance, the government's prima facie case could be defeated if the debtor shows that he was incapacitated for a period of time after a return was due, during which time an assessment by the IRS was made, and then attempted to comply as soon as he was able to do so.

■ The post-assessment conduct of the debtor may be relevant on the issue of the debtor's honest and reasonable attempt to comply. Here, the debtor contends that after he filed his returns, he cooperated with the IRS, accepted his assessed tax liability without objection, entered into an installment agreement, made payments for 28 months, made a good faith attempt to resolve the matter, and continued payments almost up until the filing of his bankruptcy petition.

■ However, the only explanation provided by the debtor for his failure to file tax returns for the 1988 through 1991 tax years until 1997 was that he was "con-

fused" about what he needed to do to meet his tax obligations. He recommenced filing returns for the tax year 1993, six years after his employer changed the structure of the debtor's compensation. The installment agreement [6] that he entered into with the IRS in 1997, rather than signifying cooperation with the IRS in the self-assessment process, signifies the debtor's cooperation with the IRS as to their collection effort against him. The debtor's explanation of his failure to file returns for 1988 through 1992, and his cooperation with the IRS beginning in 1997, does not provide a sufficient factual basis to overcome the government's prima facie case that the debtor failed to make an honest and reasonable attempt to comply with the tax law.

■ The debtor's filing of his 1991–1040 Form in 1997 triggered an additional tax assessment by the IRS of $237. The debtor argues that the additional assessment renders his entire 1991 tax liability dischargeable under § 523(a)(1)(B)(ii) because the "return" served a demonstrable tax purpose. This argument must also be rejected. The parties have agreed that the additional $237 in tax liability is the product of a self-assessment process that may be discharged by the debtor under subsection (B)(ii). But the remainder of the assessment, calculated by the IRS in 1994, and restated by the debtor three years later, does not qualify as an honest and reasonable attempt by the debtor to comply. As the IRS correctly observes, § 523(a)(1)(B) "was meant to encourage honest and self-generated reporting by taxpayers, not to immunize non-reporting

---

6. The debtor contends that the fact that the amounts due to the IRS were left blank in the installment agreement between him and the IRS signifies that the IRS gave purpose to the 1040 forms. That contention is rejected. If the amounts due were left blank because the IRS was examining the returns, it was their obligation to do so. The forms reflected identical information to the assessments. The blank spaces in the installment agreement are irrelevant.

debtors, who once caught, seek to discharge their discovered tax obligations along with other debts in bankruptcy." *In re Haywood*, 62 B.R. 482, 486 (Bankr. N.D.Ill.1986).

On this record, I conclude that the debtor's tax liability for the 1988 through 1991 tax years is nondischargeable under § 523(a)(1)(B)(i), with the exception of the assessment of $237 for the 1991 tax year, which may be discharged.