**In Re: Michael J. MORONEY, Debtor.**

Michael J. Moroney Plaintiff–
Appellant,

v.

United States of America; Internal
Revenue Service, Defendants–
Appellees.

No. 02–2417.

United States Court of Appeals,
Fourth Circuit.

Argued: Oct. 30, 2003.

Decided: Dec. 19, 2003.

---

Marla Lynn Howell, Decaro & Howell, P.C., Upper Marlboro, Maryland, for Appellant.

Kenneth L. Greene, Tax Division, United States Department of Justice, Washington, D.C., for Appellees.

Thomas M. DeCaro, Jr., Decaro & Howell, P.C., Upper Marlboro, Maryland, for Appellant.

Eileen J. O'Connor, Assistant Attorney General, Paul J. McNulty, United States Attorney, Ellen Page DelSole, Tax Division, United States Department of Justice, Washington, D.C., for Appellees.

Before WILKINSON and TRAXLER, Circuit Judges, and ROBERT E. PAYNE, United States District Judge for the Eastern District of Virginia, sitting by designation.

Affirmed by published opinion. Judge WILKINSON wrote the opinion, in which Judge TRAXLER and Judge PAYNE joined.

## OPINION

WILKINSON, Circuit Judge.

The question in this case is whether delinquent personal income tax filings, submitted years after the Internal Revenue Service has already prepared its own assessments, constitute "returns" for purposes of the Bankruptcy Code. A debtor in bankruptcy is permitted to discharge personal income tax liabilities, but only if he has filed a return with the IRS reporting those tax liabilities. In the present case, because the debtor's eventual submissions were neither honest nor reasonable attempts to comply with the tax laws, both the bankruptcy and district courts found that no returns had ever been filed. We affirm that judgment.

I.

The basic facts in this case are not in dispute. Debtor Michael J. Moroney did not submit timely personal income tax filings for either the 1990 or 1992 tax years. Moroney never offered any evidence to the bankruptcy or district courts to explain his late filing. When asked before the district court, Moroney's attorney said that Moro-

ney "just didn't get around to filing his tax returns," because he had been "extremely busy" with his job. Filing tax statements "was just something that got pushed to the back burner."

As a result of Moroney's failure to file, in 1994 the IRS began to examine Moroney's income tax liabilities. The IRS then independently prepared "Substitutes for Returns" ("SFRs") to determine the amounts that Moroney owed for the 1990 and 1992 tax years. On the basis of the SFRs, the IRS assessed taxes against Moroney of $23,197.00 for the 1990 tax year and $45,567.00 for the 1992 tax year.

At some point thereafter, Moroney submitted income tax statements for 1990 and 1992. The IRS contends that Moroney did not file his forms until November 1998. Moroney, however, points to communications between his accountants and the IRS that indicate the forms were filed two years earlier in November 1996. Regardless, Moroney concedes that his forms postdated by at least two years the SFRs prepared by the IRS, and that his forms postdated the original filing deadlines by at least four and six years, respectively. Because Moroney's forms reported tax liabilities that were less than the IRS's assessments, the IRS lowered Moroney's unpaid assessments. Specifically, the IRS abated $8,330 of the 1990 tax year assessment and $14,980 of the 1992 tax year assessment.

On March 23, 2000, Moroney filed a voluntary petition for Chapter 7 bankruptcy in the United States Bankruptcy Court for the Eastern District of Virginia. Moroney listed his 1990 and 1992 tax liabilities as nonpriority claims, subject to discharge in a Chapter 7 proceeding. However, the IRS notified Moroney that, given his delinquency in filing for those years, it did not consider his tax liabilities subject to discharge. The IRS and Moro-

ney filed cross-motions for summary judgment before the bankruptcy court, seeking a determination of whether Moroney's tax liabilities were excepted from discharge under Section 523 of the Bankruptcy Code. The bankruptcy court held that Moroney had not filed a "return" within the meaning of Section 523 and therefore that Moroney's tax liabilities were not dischargeable in bankruptcy. On appeal, the United States District Court for the Eastern District of Virginia affirmed the bankruptcy court's grant of summary judgment. Moroney now challenges the decisions of the bankruptcy and district courts.

## II.

In general, a debtor filing for relief under Chapter 7 of the Bankruptcy Code is discharged from all pre-petition debt, subject to the exceptions enumerated in Section 523. In relevant part, Section 523 provides:

(a) A discharge under section 727 ... does not discharge an individual debtor from any debt—

(1) for a tax or a customs duty—

\* \* \*

  (B) with respect to which a return, if required—

  (i) was not filed; or

  (ii) was filed after the date on which such return was last due ... and after two years before the date of the filing of the petition; or

  (C) with respect to which the debtor made a fraudulent return or willfully attempted in any manner to evade or defeat such tax.

11 U.S.C. § 523 (2000). The exception at issue here, set forth in Section 523(a)(1)(B)(i), excludes from discharge taxes "with respect to which a return, if required[,]" "was not filed."[1] The ques-

---

1. Section 523(a)(1)(B)(ii) excludes from discharge taxes for which a return was filed both

tion is whether Moroney's late-filed forms constitute returns, thus rendering his tax liabilities dischargeable.

## A.

■ Neither the Bankruptcy Code nor the Internal Revenue Code defines the term "return." The Internal Revenue Code generally requires that those owing taxes "make a return or statement" on the necessary forms, without specifying how timely the forms must be in order to qualify as returns. 26 U.S.C. § 6011(a) (2000). However, our sister circuits have uniformly held that in order for a document to be considered a "return," under either the bankruptcy or the tax laws, it must (1) purport to be a return; (2) be executed under penalty of perjury; (3) contain sufficient data to allow calculation of tax; and (4) represent an honest and reasonable attempt to satisfy the requirements of the tax laws. *See, e.g., In re Hindenlang,* 164 F.3d 1029, 1033 (6th Cir.1999) (citing *Beard v. Commissioner,* 82 T.C. 766, 1984 WL 15573 (1984), *aff'd,* 793 F.2d 139 (6th Cir.1986)); *In re Hatton,* 220 F.3d 1057, 1060–61 (9th Cir.2000) (citing *Hindenlang* and *Beard*).

Moroney and the IRS agree that Moroney's late-filed statements purported to be returns; that they were executed under penalty of perjury; and that they contained sufficient data to permit calculation of Moroney's taxes, although of course the IRS had already determined Moroney's taxes using SFRs. Moroney and the IRS's disagreement concerns whether Moroney's

statements were honest and reasonable attempts to satisfy the filing requirement imposed by the bankruptcy and tax laws.

More fundamentally, they disagree about the relevant time frame in which to assess the honesty and reasonableness of Moroney's belated statements. Moroney contends that his purported returns satisfy the filing requirement, because—at the time they were filed—they were accurate on their face and intended to comply with the tax laws. Moroney notes that some courts in determining good faith have focused on the debtor's intent at the time the returns are filed, rather than on the debtor's intent during the delay prior to filing. *See, e.g., In re Nunez,* 232 B.R. 778, 783 (B.A.P. 9th Cir.1999);[2] *In re Crawley,* 244 B.R. 121, 128 (Bankr.N.D.Ill. 2000).

The IRS, however, rejoins that most courts have not ignored a debtor's delinquency in filing, especially where the IRS's interim preparation of a SFR renders the debtor's filing unnecessary. According to these courts, forms filed after an involuntary assessment do not serve the purposes of the tax system, and thus rarely, if ever, qualify as honest and reasonable attempts to comply with the tax laws. *See, e.g., Hindenlang,* 164 F.3d at 1034; *In re Sgarlat,* 271 B.R. 688, 696 (Bankr.M.D.Fla. 2001); *In re Hetzler,* 262 B.R. 47, 54 (Bankr.D.N.J.2001); *In re Walsh,* 260 B.R. 142, 151 (Bankr.D.Minn.2001); *In re Pierchoski,* 243 B.R. 267, 271 (W.D.Pa.1999);

after its original due date and within two years of the filing of the debtor's bankruptcy petition. Because we hold that Moroney never filed a "return" for purposes of Section 523(a)(1)(B)(i), the disputed date of his filing for purposes of Section 523(a)(1)(B)(ii) is unimportant.

**2.** Although Moroney relies heavily on *Nunez,* it is not clear that *Nunez* remains controlling.

The Bankruptcy Appellate Panel's decision in *Nunez* relied heavily on its prior decision in *In re Hatton,* 216 B.R. 278 (B.A.P. 9th Cir. 1997), which was later reversed by the Ninth Circuit. *See In re Hatton,* 220 F.3d 1057, 1061 (9th Cir.2000). Whether the Ninth Circuit implicitly overruled *Nunez* in *Hatton* is uncertain. *Contrast In re Hetzler,* 262 B.R. 47, 53 (Bankr.D.N.J.2001), *with In re Rushing,* 273 B.R. 223, 227 (Bankr.D.Ariz.2001).

*In re Prince,* 240 B.R. 261, 263–64 (Bankr. N.D.Ohio 1999).

■ We agree with the weight of authority that a debtor's delinquency is relevant to determining whether the debtor has filed a return. The very essence of our system of taxation lies in the self-reporting and self-assessment of one's tax liabilities. *See Commissioner v. Lane–Wells Co.,* 321 U.S. 219, 223, 64 S.Ct. 511, 88 L.Ed. 684 (1944). Timely filed federal income tax returns are the mainstay of that system. A reporting form filed after the IRS has completed the burdensome process of assessment without any assistance from the taxpayer does not serve the basic purpose of tax returns: to self-report to the IRS sufficient information that the returns may be readily processed and verified. *See id.; United States v. Boyle,* 469 U.S. 241, 249, 105 S.Ct. 687, 83 L.Ed.2d 622 (1985). Simply put, to belatedly accept responsibility for one's tax liabilities, only when the IRS has left one with no other choice, is hardly how honest and reasonable taxpayers attempt to comply with the tax code. *See Hatton,* 220 F.3d at 1061.

■ Here, there is no question that Moroney failed to file timely returns, and that as a result of his failure, the IRS had to assume the onerous task of estimating Moroney's taxes without his assistance. Moroney did not explain to the bankruptcy or district courts why his eventual filings were anything other than self-serving attempts to reduce his tax liabilities. And he never attempted to explain why his statements, which were submitted at least four to six years after the original deadlines, should be considered honest and reasonable attempts at compliance with the tax laws. To consider Moroney's statements "returns" would thus be to render that word a ghost of its true self. In fact, by Moroney's own admission, he simply did not "get around to filing his tax re-

turns." As the district court correctly observed, such nonchalance falls well short of satisfying the statutory standard.

## B.

However, Moroney argues that his late-filed statements, despite their extreme delinquency, functioned no differently from timely filed tax returns. His statements, like timely filed returns, self-reported his tax liabilities. And although the IRS had prepared SFRs before Moroney filed, Moroney contends that his statements still were not purposelessly duplicative. Rather, because his statements showed lesser liabilities than the IRS had estimated, the IRS abated portions of its prior assessments. In Moroney's view, his statements must be considered honest and reasonable attempts to comply with the tax laws—after all, the IRS credited them enough to reduce his assessments.

Moroney's argument, however, misses the point. The relevant inquiry is whether Moroney made an honest and reasonable effort to comply with the tax laws, and not whether Moroney's eventual effort had some effect on his tax liability. Under Moroney's approach, the availability of discharge would turn on the IRS's accuracy in assessing taxes, rather than on Moroney's sincerity and diligence in complying with the tax code. In effect, Moroney failed to provide the IRS with the very information it needed to accurately assess his taxes, and now he seeks to benefit from the IRS's resulting imprecision (which was hardly surprising, given Moroney's lack of assistance). Moroney's approach would only discourage the IRS from abating debtors' tax liabilities—especially when any adjustment, no matter how small, would lead to a discharge of the entire tax liability, no matter how large.

## C.

Moroney also argues that any inquiry into his honesty and reasonableness in filing late should occur not under Section 523(a)(1)(B)(i), which excepts from discharge taxes for which returns were never filed; but instead under Section 523(a)(1)(C), which excepts from discharge taxes "with respect to which the debtor has made a fraudulent return or willfully attempted in any manner to evade or defeat such tax." In Moroney's view, Section 523(a)(1)(B)(i) requires only that a statement be filed. To the extent that the statement is inaccurate, incomplete or untimely, that is the purview solely of Section 523(a)(1)(C). In other words, Section 523(a)(1)(C) alone is designed to police debtors' bad faith conduct. *Accord Nunez,* 232 B.R. at 783.

■ Moroney is wrong to conclude that the Bankruptcy Code implicitly condones any conduct that does not rise to the level of outright fraud or evasion. A "return" is not reasonably understood to mean any tax form—whatever its defects—submitted to the IRS, but rather a form that in good faith reports required information like income, deductions, exemptions, and taxes due. Delinquency, no less than fraud or willful evasion, can result in tax forms not naturally thought of as returns.

Section 523(a)(1)(B)(i)'s filing requirement governs debtors precisely like Moroney: debtors whose inaction or inaccuracy, even if not sufficiently malodorous to be deemed fraudulent or evasive, disqualifies them from the fresh start that bankruptcy provides. The Bankruptcy Code allows honest debtors to discharge the taxes they cannot pay. It does not permit them to discharge the obligation owed by all taxpayers, whatever their financial condition, to file timely returns. Debtors like Moroney cannot seek the safe haven of bankruptcy by failing to file tax returns, waiting to see if the IRS assesses taxes on its own, and then submitting statements long after the IRS has been put to its costly proof. *See Walsh,* 260 B.R. at 149.

## III.

We hold then that income tax forms unjustifiably filed years late, where the IRS has already prepared substitute returns and assessed taxes, do not constitute "returns" for purposes of 11 U.S.C. § 523(a)(1)(B)(i). For its part, the government urges a broader rule than we adopt here, namely, that any post-assessment filing can never qualify as a return for purposes of Section 523(a)(1)(B)(i). This simply goes too far. Circumstances not presented in this case might demonstrate that the debtor, despite his delinquency, had attempted in good faith to comply with the tax laws. *See Rushing,* 273 B.R. at 227; *Hetzler,* 262 B.R. at 54. For instance, a post-assessment filing might actually increase a taxpayer's liabilities. *See Hindenlang,* 164 F.3d at 1034 n. 5. Of course, the taxpayer would still have to demonstrate that his filing was an honest and reasonable attempt at self-assessment, rather than merely an effort to increase his odds of discharging his taxes in bankruptcy.

Here we face only a debtor who was apparently too busy, for no less than six years, to file returns, and whose ultimate filing was merely an attempt to lessen the liability that he never wanted to assume. Under these circumstances, we cannot hold that Moroney filed a return in any meaningful sense of that word. We thus affirm the judgment of the district court.

*AFFIRMED*