**In re Freddie STOKES, Debtor.**

**No. 03–16408.**

United States Bankruptcy Court,
D. Maryland,
at Greenbelt.

Oct. 29, 2004.

Laura J. Margulies, Rockville, MD, Counsel for the Debtor.

Dara B. Oliphant, Washington, DC, Trial Attorney for U.S. Dept. of Justice.

## MEMORANDUM OF DECISION

DUNCAN W. KEIR, Bankruptcy Judge.

Debtor filed a Petition under Chapter 13 of the United States Bankruptcy Code on June 10, 2003. The Internal Revenue Service (the "IRS") filed an amended proof of claim (the "IRS Proof of Claim") in Debtor's case in the amount of $78,236.86, with $65,295.00 categorized as a secured claim, $346.43 categorized as an unsecured priority claim and $12,595.43 categorized as an unsecured claim. The IRS Proof of Claim is based upon tax assessments made against Debtor for the 1995, 1996, 1997 and 1998 tax years. Debtor filed a timely objection to the IRS Proof of Claim and the IRS filed a response to Debtor's objection. A hearing was held on January 28, 2004 to consider this matter and parties were permitted to submit post-hearing memoranda. Upon consideration of the evidence presented at the hearing held on January 28, 2004 and the post-hearing submissions filed by both parties, the court determines that Debtor's objection to the IRS Proof of Claim is denied.

## I. BACKGROUND

It is undisputed that on April 6, 1999, Debtor filed tax returns with the IRS for the 1995, 1996 and 1997 tax years. It is also undisputed that Debtor's tax return for 1998 was filed on August 14, 1999. Based upon the amounts reported on Debtor's untimely returns, the IRS assessed penalties and interest against Debtor for those years.[1] Consequently, the IRS applied tax refunds owed to Debtor for later years to Debtor's tax liabilities for 1995–1998. Specifically, on April 15, 2001, the IRS applied $2,795.37 of the amount to be refunded to Debtor for the 2000 tax year to Debtor's liability for the 1995 tax year and on September 24, 2001, the IRS applied an additional $169.35 to Debtor's tax liability for 1995. Similarly, on April 15, 2002, $134.65 of the amount to be refunded to Debtor for the 2001 tax year was applied to Debtor's tax liability for 1995.

Debtor disputes his tax liability for the 1995–1998 tax years. Debtor argues that upon learning that the IRS applied his 2000 and 2001 refunds to his 1995 tax liability, Debtor contacted the IRS in July 2002. At this time, Debtor learned that the original tax returns he filed for the 1995–1998 tax years incorrectly scheduled rental income received by him during those years.[2] Debtor states that the IRS representative with whom he spoke informed him that if he had properly scheduled his rental income on his returns, Debtor would not have been assessed any liability for those years. Upon learning

---

1. The Certificate of Official Record attached as an exhibit to Debtor's post-hearing memorandum reflects that Debtor attempted to enter into an offer-in-compromise with the IRS on November 12, 1999. Debtor's offer-in-compromise was rejected on March 29, 2002. On November 21, 2003, Debtor again attempted to negotiate his liabilities. The sec-

ond offer-in compromise was also rejected by the IRS.

2. Debtor states that the rental income was incorrectly scheduled on Form 1040 Schedule C (Profit or Loss From Business) rather than on Form 1040 Schedule E (Supplemental Income and Loss).

this, Debtor ordered copies of his original returns for years 1995–1998 and on January 30, 2003, Debtor hand-delivered revised tax returns for those years (the "Amended Returns") to the IRS office in Philadelphia, Pennsylvania.[3]

On or about February 11, 2003, the IRS filed notices of federal tax liens against Debtor in the Circuit Court for Prince George's County, Maryland for Debtor's tax liabilities for the 1995–1998 tax years. Just over one month later, on March 12, 2003, Debtor states that he received a telephone call from a representative of the IRS requesting that Debtor send additional information regarding the Amended Returns. Debtor states that he faxed the requested information to the IRS representative on March 19, 2003.[4]

At the hearing held on January 28, 2004, the IRS argued that it is not required by statute or regulation to accept amended tax returns filed after the deadline for filing the original return has expired. Consequently, the IRS informed the court that it would not accept Debtor's Amended Returns. Debtor, who up until the hearing believed his Amended Returns had been accepted by the IRS, asserts that the IRS is abusing its discretion by refusing to accept the Amended Returns. Debtor argues that it is the general administrative practice of the IRS to recognize amended returns that correct clear errors or plain mistakes in the original returns.

In its response to Debtor's post-hearing memorandum, the IRS argues that by attempting to force the IRS to accept Debtor's tax liabilities as reported on the Amended Returns,[5] Debtor is seeking injunctive relief that is prohibited by the Anti–Injunction Act found at 26 U.S.C. § 7421. Accordingly, the IRS states that this court is precluded from exercising jurisdiction over this matter to the extent Debtor seeks to enjoin the assessment of his 1995–1998 tax liabilities. Additionally, the IRS argues that it is not required to accept the Amended Returns and asserts that Debtor has provided insufficient evidence to overcome the presumption in favor of the accuracy of the tax assessments based upon Debtor's original returns.

## II. ISSUES

The first issue presented in this case is whether this court is barred from exercising jurisdiction over this matter under the Anti–Injunction Act found in the Internal Revenue Code. If the court has jurisdiction, it must then determine whether the IRS properly rejected the Amended Returns and if so, whether Debtor has provided sufficient evidence to overcome the presumption in favor of the accuracy of the IRS Proof of Claim. Lastly, if the Amended Returns were improperly rejected by the IRS, the court must determine what liability, if any, Debtor has for the 1995–1998 tax years.

## III. ANALYSIS

### A. Jurisdiction

██ The Anti–Injunction Act, found at § 7421(a) of the Internal Revenue Code, provides that with limited exceptions, "no suit for the purpose of restraining the assessment or collection of any tax shall be

---

**3.** Copies of Debtor's Amended Returns for years 1995–1998 are attached as Exhibit A to Debtor's objection to the IRS Proof of Claim.

**4.** Debtor attaches a copy of the information he faxed to the IRS representative as Exhibit D to the objection to claim.

**5.** Debtor asserts that the Amended Returns will result in no liability on his behalf for the 1995–1998 tax years.

maintained in any court by any person, whether or not such person is the person against whom such tax was assessed." 26 U.S.C. § 7421(a). Generally, this act prohibits federal courts from entertaining any action to enjoin the IRS from assessing or collecting taxes. *See Hillyer v. C.I.R.*, 817 F.Supp. 532, 535 (M.D.Pa.,1993).

In this case, the IRS argues that the Anti–Injunction Act precludes this court from exercising jurisdiction over this matter to the extent that it seeks to enjoin the assessment of Debtor's tax liability for 1995 through 1998. Therefore, the IRS asserts that any attempt to compel it to accept the Amended Returns must be rejected. For the following reasons, the court rejects the IRS's jurisdictional argument.

The jurisdiction of bankruptcy courts is set forth in 28 U.S.C. § 1334, which provides:

(a) Except as provided in subsection (b) of this section, the district courts shall have original and exclusive jurisdiction of all cases under title 11.

(b) Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.

28 U.S.C. § 1334. Also applicable is 28 U.S.C. § 157(a), which allows each district court to provide that "any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district." 28 U.S.C. § 157(a). In Maryland, District Court Rule 402 is the general rule of reference that refers all bankruptcy cases under title 11, or arising in or related to a case under chapter 11, to the bankruptcy judges in this district. Moreover, 28 U.S.C. § 157(b) specifically grants bankruptcy judges the authority to determine core proceedings arising under the Bankruptcy Code. Core proceedings include the allowance or disallowance of claims against the estate. 28 U.S.C. § 157(b)(2)(B).[6] Accordingly, this court has statutory subject matter jurisdiction over Debtor's objection to the IRS Proof of Claim.

■ Personal jurisdiction over the IRS also exists in this case and was established upon the filing by the IRS of a timely proof of claim in Debtor's bankruptcy case. The proof of claim filed by the IRS is analogous to a complaint filed in the District Court. *See In re American Export Group Intern. Services, Inc.*, 167 B.R. 311, 313 (Bankr.D.C.1994) (*citing In re Continental Airlines*, 928 F.2d 127, 129 at n. 1 (5th Cir.1991)). Once a party files a complaint, the party is viewed as having submitted to personal jurisdiction in that forum. *Id.* (*citing Adam v. Saenger*, 303 U.S. 59, 67–68, 58 S.Ct. 454, 458–59, 82 L.Ed. 649 (1938); *Estrada v. Ahrens*, 296 F.2d 690, 694 (5th Cir.1961)). Thus, the IRS has submitted to the jurisdiction of this court to determine the allowance or disallowance of its claim.[7]

---

**6.** 28 U.S.C. § 157(b) provides, in part, that bankruptcy judges "may hear and determine all cases under title 11 and all core proceedings arising under title 11." 28 U.S.C. § 157(b).

**7.** Alternatively, jurisdiction to decide this dispute is conferred by section 505(a)(1) of the United States Bankruptcy Code. This section confers, with limited exceptions, jurisdiction upon the bankruptcy courts to "determine the amount or legality of any tax, any fine or penalty relating to a tax, or any addition to tax," assessed against the debtor. *In re Hayes*, 240 B.R. 457, 462–463 (Bankr.D.Mass. 1999) (*citing* 11 U.S.C. § 505).

■ Additionally, by filing an objection to the IRS Proof of Claim, Debtor is not seeking to enjoin the IRS from assessing or collecting taxes deemed owed by the Debtor. Rather, the remedy sought is a determination as to whether the IRS has an allowed claim in Debtor's bankruptcy case and is therefore, entitled to receive a distribution pursuant to the Debtor's Chapter 13 plan. The Anti–Injunction Act does not preclude this court from making such a determination. Nor does the Anti-Injunction Act prevent this court from determining the extent to which the IRS may have an allowed secured claim pursuant to section § 506(a) of the Bankruptcy Code.[8] Such determinations are the very matters submitted to this court by the filing of a proof of claim in Debtor's bankruptcy case.

## B. Rejection of the Amended Returns

■ The next issue to be determined is whether the IRS properly rejected Debtor's Amended Returns. The first step in this analysis is whether Debtor's Amended Returns qualify as tax "returns." While the Internal Revenue Code does not define the term "return," courts have uniformly held that in order for a document to qualify as a "return," it must: (1) purport to be a return; (2) be executed under penalty of perjury; (3) contain sufficient data to allow calculation of tax and (4) represent an honest and reasonable attempt to satisfy the requirements of the tax laws. *See Moroney v. United States (In re Moroney),* 352 F.3d 902, 905 (4th Cir.2003). In *Moroney,* the United States Court of Appeals for the Fourth Circuit held that a debtor's delinquency in filing his or her tax returns is relevant to determining whether the debtor has filed a return. *See id.* at 906.[9] The Fourth Circuit held that the "relevant inquiry is whether [the debtor] made an honest and reasonable effort to comply with the tax laws, and not whether [the debtor's] eventual effort had some effect on his tax liability." *Id.* at 906. The Fourth Circuit affirmed the district court in holding that income tax forms unjustifiably filed years late and filed after the IRS has already prepared substitute returns and assessed taxes do not constitute "returns" for purposes of 11 U.S.C. § 523(a)(1)(B)(I). *Id.* at 907. The Fourth Circuit refused, however, to adopt a broader rule providing that any post-assessment filing can never qualify as a return for purposes of 11 U.S.C. § 523(a)(1)(B)(I). *Id.*

In this case, the IRS relies on *Moroney* to argue that the Amended Returns do not qualify as "returns" because they were filed too late to be considered honest and reasonable attempts to satisfy the require-

8. The court recognizes that whether or not the IRS is deemed to hold an allowed claim, 11 U.S.C. § 362(a) stays any attempt by the IRS to collect upon its claim without obtaining relief from the automatic stay until the case is closed, dismissed or upon entry of a discharge. The court also notes that if the determination of allowance is based upon a required finding of liability on behalf of Debtor and a determination of the amount due the IRS, such determinations could have a preclusive effect in subsequent proceedings regarding the amount of debt.

9. *Moroney* is a dischargeability case involving a debtor whose failure to file tax returns re-

sulted in the IRS independently preparing "Substitutes for Returns." Based upon the substitute returns, the IRS assessed taxes against the Debtor approximately two years after the original filing deadlines. The debtor then submitted income tax statements for the years for which the IRS prepared substitute returns. The IRS argued that the untimely statements filed by the debtor did not qualify as honest and reasonable attempts to satisfy the filing requirements imposed by the bankruptcy and tax laws and therefore, were not "returns" for purposes of 11 U.S.C. § 523(a)(1)(B)(I).

ment of the tax laws. Debtor, however, distinguishes *Moroney* from the facts in this case because here, the IRS never prepared substitute returns for Debtor for the 1995–1998 tax years nor is Debtor attempting to discharge any tax liability. Rather, Debtor states that he made an honest mistake in his original returns and filed the Amended Returns when the mistake was brought to his attention.

Although Debtor filed his Amended Returns after the IRS assessed penalties and interest against him based upon the amounts reflected in his original returns, the court agrees with Debtor that the facts of his case are sufficiently different from the facts in *Moroney* to qualify the Amended Returns as "returns." Despite the untimely nature of the original returns, Debtor filed them prior to the IRS having to generate substitute returns and that appears to be the primary basis for the decision in *Moroney*. Accordingly, the court determines that the Amended Returns qualify as "returns" under the Internal Revenue Code.

■■■■ As for whether it was proper for the IRS to reject the Amended Returns, the parties agree that "there is no statute or general regulation having the effect of law which vests in a taxpayer the right to file an amended return after the time for the filing of the original return has expired." *Klinghamer v. Brodrick,* 242 F.2d 563, 564 (10th Cir.1957).[10] Nevertheless, while the IRS has, as a matter of internal administration, recognized and accepted such returns for limited purposes, including to correct plain errors in original returns, "their treatment has not been elevated beyond a matter of internal

agency discretion." *Koch v. Alexander,* 561 F.2d 1115, 1117 (4th Cir.1977) (*citing Kearney v. A'Hearn,* 210 F.Supp. 10 (S.D.N.Y.1961), *aff'd per curiam by* 309 F.2d 487 (2d Cir.1962); *Klinghamer,* 242 F.2d at 564). "As the Third Circuit has recognized, 'it would be utterly disruptive of the administration of the tax laws if a taxpayer could disregard his return and automatically change an assessment based thereon by making an amended return in his favor long after the expiration of the time for filing the original return.'" *Id.* (*quoting Miskovsky v. United States,* 414 F.2d 954, 956 (3d Cir.1969)). A taxpayer must show that the IRS abused its discretion by refusing to accept an amended return. *See Schall & Co. v. United States,* 129 F.Supp. 137, 141 (S.D.N.Y.1954) (*citing Morrow, Becker & Ewing, Inc. v. C.I.R.,* 57 F.2d 1 (5th Cir.1932)).

Debtor argues that the IRS abused its discretion by refusing to accept his Amended Returns since the Amended Returns corrected clear errors or plain mistakes in his original returns. Alternatively, Debtor argues that even if the IRS refuses to accept the Amended Returns, Debtor may still challenge the IRS Proof of Claim pursuant to 11 U.S.C. § 502(a) and Federal Rule of Bankruptcy Procedure 3007. Debtor argues that because the IRS Proof of Claim is based upon "business income" that the Debtor never received, the assessment by the IRS of self-employment taxes is improper.

■■■ The IRS maintains that it is within the Agency's discretion to reject the Amended Returns. Moreover, the IRS argues that Debtor has produced insufficient evidence to overcome the presumption that

---

10. In *Klinghamer,* the United States Court of Appeals for the Tenth Circuit affirmed the holding of the district court that the IRS did not abuse its discretion by refusing to accept an amended return, filed after the deadline for the filing of the original return, that changed the treatment for tax purposes of an item of interest from that of a deductible business expense to that of a non-taxable return of capital. *Id.* at 564.

the assessments are correct.[11] *See Raleigh v. Illinois Dept. of Revenue*, 530 U.S. 15, 120 S.Ct. 1951, 147 L.Ed.2d 13 (2000) (holding that the burden of proof on a tax claim in bankruptcy remains where the substantive tax law puts it and the taxpayer must first dispense with the presumption of correctness by persuading the court by a preponderance of evidence that the assessment is arbitrary and excessive.) The IRS argues that copies of Debtor's original tax returns and his Amended Returns are insufficient to prove by a preponderance of evidence that the assessments by the IRS are incorrect.

The court agrees with the IRS that Debtor has failed to demonstrate that the IRS abused its discretion by refusing to accept the Amended Returns. It is undisputed that the decision to accept or reject an amended tax return lies within the discretion of the IRS. Absent a showing that the IRS abused its discretion in rejecting an amended return, the IRS's determination will be upheld. The record in this case reflects that Debtor's original tax returns for tax years 1995–1997 were filed on April 6, 1999—nearly three years after the date by which his tax return for 1995 was due. Moreover, the Amended Returns were not filed until January 30, 2003—nearly four years after the untimely filing of his original returns. Although Debtor filed an "Offer in Compromise" in an attempt to negotiate his liabilities, it was not until the IRS offset his 1995 liability with Debtor's 2000 and 2001 refunds that Debtor contacted the IRS in July 2002 and learned that he allegedly had misscheduled rental income on his original returns. Between November 12, 1999 and March 2, 2002, the Certified Records of Assessments and Payments reflect that Debtor's

Offer in Compromise was pending. No assertion has been made that during this lengthy period of time, Debtor attempted to demonstrate that he had no liability. The record merely reflects that Debtor wanted to negotiate the extent of his liabilities. As the United States Court of Appeals for the Fourth Circuit recognized in *Koch v. Alexander*, 561 F.2d at 1117, it would be disruptive of the administration of the tax laws if a taxpayer could file an amended return in his favor long after the expiration of the time for filing the original return. Debtor had notice of the assessments and attempted to negotiate the assessments but it was not until his Offer in Compromise was denied and his tax refunds for later years were applied to his liabilities for previous years that Debtor filed amended returns reflecting no liability on his part. Based upon these facts, the court holds that the IRS did not abuse its discretion in rejecting the Amended Returns.

The court also agrees that Debtor has provided insufficient evidence to demonstrate that the assessments based on his original tax returns are arbitrary and excessive. Debtor's first Offer in Compromise was under consideration by the IRS for over two years and resulted in no change in the amount of Debtor's liability. Copies of the original tax returns and Amended Returns and evidence of Debtor's communications with the IRS regarding the Amended Returns are insufficient to meet Debtor's burden that the assessments made by the IRS are arbitrary and excessive.

## IV. CONCLUSION

For these reasons, Debtor's objection to the IRS Proof of Claim is denied. An

---

**11.** Once a taxpayer meets this burden and overcomes the presumption of correctness, the burden shifts to the IRS to prove the correct amount of any deficiency. *See Cebollero v. Commissioner*, 967 F.2d 986, 990–991 (4th Cir.1992).

Order in conformity with this Memorandum of Decision will be entered accordingly.