In the

# United States Court of Appeals

### For the Seventh Circuit

————

No. 05-1941

IN RE:

JOHN HOWARD PAYNE,

Debtor-Appellee.

APPEAL OF:

UNITED STATES OF AMERICA.

————

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 04 CV 2740—**Amy J. St. Eve**, *Judge*.

————

ARGUED SEPTEMBER 27, 2005—DECIDED DECEMBER 14, 2005

————

Before CUDAHY, POSNER, and EASTERBROOK, *Circuit Judges*.

POSNER, *Circuit Judge*. The question presented by this appeal is whether a debtor may obtain a discharge in bankruptcy from a tax debt owed to the Internal Revenue Service if he failed to file a return until after the IRS assessed the tax that he owed. The bankruptcy judge, seconded by the district judge, answered yes, and the government appeals.

Payne filed no federal income tax return for 1986 until 1992, which was of course too late. In 1989, however, the Internal Revenue Service, probably on the basis of an information return submitted by someone from whom

Payne had obtained income in 1986 from which income tax had not been withheld, had discovered that Payne had not filed a return for that year and might owe income tax. The following year, after investigating the matter, the IRS assessed Payne for federal income tax due for 1986 of some $64,000, and after crediting him with the amount of tax that had been withheld by his employer ($44,000) began efforts to collect the balance. In 1992, months after the belated filing of his 1986 tax return, Payne offered to compromise his tax liability with the IRS. The IRS rejected his offer. In 1997 Payne filed for bankruptcy and sought, and the following year received, a discharge of his unpaid 1986 tax liability. The government argues that he was not entitled to a discharge.

Section 523(a)(1)(B)(i) of the Bankruptcy Code forbids the discharge of federal income tax liability with respect to which a "return" was required to be filed but "was not filed." Payne argues that he filed a return for 1986, all right, albeit six years late and after the IRS had gone to the trouble of figuring out what he owed for that year and assessing him the amount. The government argues that an untimely post-assessment return is not a "return" within the meaning of the statute and that therefore Payne has never filed a 1986 return and so cannot be discharged from liability for the taxes that he owes for that year.

The Bankruptcy Code does not define "return." Nor for that matter does the Internal Revenue Code. But there is case law interpreting it because a lot can turn on whether a submission to the IRS qualifies as a return. Taxpayers are required to file tax returns, so a taxpayer who files a document that purports to be, but is held not to be, a return can be in serious trouble.

The cases hold that to be deemed a return, a document filed with the IRS must (1) purport to be a "return," (2) be signed under penalty of perjury, (3) contain enough information to enable the taxpayer's tax liability to be calculated, and (4) "evince[ ] an honest and genuine endeavor to satisfy the law." *Zellerbach Paper Co. v. Helvering*, 293 U.S. 172, 180 (1934); *United States v. Moore*, 627 F.2d 830, 834-35 (7th Cir. 1980). "Genuine" is vague, however, and later cases sensibly substitute "reasonable." *In re Moroney*, 352 F.3d 902, 905 (4th Cir. 2003); *In re Hatton*, 220 F.3d 1057, 1060-61 (9th Cir. 2000); *In re Hindenlang*, 164 F.3d 1029, 1033 (6th Cir. 1999); *Beard v. Commissioner*, 82 T.C. 766, 779 (Tax Court 1984), aff'd, 793 F.2d 139 (6th Cir. 1986). A purported return that does not satisfy all four conditions does not play the role that a tax return is intended to play in a system, which is our federal tax system, of self-assessment. So while a "return" that satisfies the first three conditions comports with the literal meaning of the word, it does not comport with the functional meaning.

All but the fourth condition is satisfied by Payne's belated return. That condition—that the purported return evidence an "honest and reasonable" endeavor to comply with the law—is not satisfied, and not only or even mainly because Payne offers no excuse for having failed to file his 1986 return until six years after it was due. (At argument, his lawyer claimed without elaboration that the period from 1986 to 1992 was a "difficult" one in his client's life. That assertion is not evidence and is entitled to no weight in our consideration of the appeal.) More important, the belated "return" was not a reasonable endeavor to satisfy Payne's tax obligations. It may have been intended to induce the IRS to talk compromise with him, although it was only later that the IRS adopted a rule requiring the filing of a return as a prerequisite to negotiating a compromise. The belated filing

may also or instead have been intended to set the stage for Payne's attempt to discharge his tax debt in bankruptcy. That is speculation; what is certain is that the belated filing was not a reasonable effort to satisfy the requirements of the tax law, namely, the requirements of filing a timely return and paying the amount of tax calculated on the return. When Payne filed, the IRS had already calculated the tax due from him, which means that he had succeeded in defeating the main purpose of the requirement that taxpayers file income-tax returns: to spare the tax authorities the burden of trying to reconstruct a taxpayer's income and income-tax liability without any help from him. A return filed after the authorities have borne that burden does not serve the purpose of the filing requirement. Had Payne filed his 1986 return on time, rather than filing for bankruptcy a decade later, the IRS might have been able to collect the entire $20,000 that he owed. It collected the $44,000 of taxes due from Payne for 1986 that had been withheld by his employer; it might well have been able to obtain the rest—there is no suggestion that Payne was already bankrupt in 1986 or that having to pay $20,000 to the IRS would have tipped him into bankruptcy.

Payne hints that his return, belated as it was, did furnish the IRS with some helpful information, for he says that "the Government points to no information sought from [him] that was not provided by him." But he does not specify any useful information that he was asked to and did provide. It is true that after he filed his return, which showed taxable income on which he had failed to pay the full tax owing, he could no longer argue that he owed nothing. But this concession was academic, since, as far as appears, his purpose in filing the belated return was to satisfy a condition precedent to obtaining a discharge rather than to pay any of the taxes that he owed. Similarly, the fact

that the IRS now has a rule that requires the filing of the belated return as a condition to talking compromise, while it shows that in some cases the return is useful to the Service, does not show that it was useful here. But neither Payne's purpose nor whether his return had any value to the IRS is critical. The legal test is not whether the filing of a purported return has some utility for the tax authorities, but whether it is a *reasonable* endeavor to satisfy the taxpayer's obligations, as it might be if the taxpayer had tried to file a timely return but had failed to do so because of an error by the Postal Service. There was nothing like that here.

Our conclusion that the return that Payne filed in 1992 was not a "return" for purposes of allowing him to discharge his tax liabilities in bankruptcy is consistent with all the appellate decisions (*Moroney*, *Hatton*, and *Hindenlang*) that deal with untimely tax returns brandished in the bankruptcy court in an effort to obtain a discharge. See also *Hayes v. United States*, 227 F.2d 540, 542-43 (10th Cir. 1955). Payne cites cases that hold that a fraudulent tax return is a return for purposes of criminal and civil fraud statutes even though such a return is worse than useless to the taxing authorities. *Badaracco v. Commissioner*, 464 U.S. 386, 396-97 (1984); *In re Meyers*, 196 F.3d 622, 625 (6th Cir. 1999); *Klemp v. Commissioner*, 725 F.2d 1488, 1488 (9th Cir. 1984). He argues that if a fraudulent return is a return, then surely a return that is merely not very helpful, or even completely useless, to the taxing authorities, rather than being fraudulent, is also a return. But there is no reason why the word "return," undefined in either the Bankruptcy Code or the Internal Revenue Code, should carry the same meaning regardless of context. As we have noted in reference to another term in the Internal Revenue Code, "It would not be surprising for the same word to bear two meanings in different contexts." *Indianapo-*

*lis Life Ins. Co. v. United States*, 115 F.3d 430, 435 (7th Cir. 1997); see also *United States v. Bishop*, 412 U.S. 346, 356-58 (1973).

Consider the different contexts found just in tax cases, rather than the greater contextual difference between a bankruptcy discharge and a charge of fraud. In Case A, the taxpayer on April 15, 1987, mails what purports to be his tax return for 1986, and what indeed is labeled a return, is signed under penalty of perjury, and contains all the data necessary to calculate his taxes, but he deliberately mails it not to the Internal Revenue Service but instead to Arlington National Cemetery. That is not a "return" in any but a literal sense because it is not an honest and reasonable attempt to satisfy tax obligations, and if prosecuted for failing to file a return the taxpayer could not point to it by way of defense. In Case B, the taxpayer mails to the right address a return that appears to comply fully with the requirements for a return but in it he claims a blind and dependent exemption for his pet cat, whom he describes as his mother. This is deemed a return if he is prosecuted for fraud, even though it is again not an honest and reasonable attempt to satisfy his obligations. It is a return because the submission of it is conduct that Congress intended to punish in prohibiting fraudulent tax returns.

If "return" can thus mean two different things in different parts of the federal tax law, it can mean a different thing in a bankruptcy case and in a fraudulent-return case. In the latter setting, a dishonest return is classified as a return in order to discourage fraud; in the former case, a return that does not meet the "honest and reasonable endeavor" standard is denied the status of a return in order to discourage people from using bankruptcy law to avoid having to satisfy one's tax liabilities. Not that there is culpability if an

honest taxpayer simply does not have the money to pay the taxes he owes; but there is if the taxpayer fails to file a timely income tax return and when years later the IRS finally catches up with him declares bankruptcy. All the cases cited to us make sense and are consistent if "return" can vary with context; nonsense results if "return" must bear the same meaning everywhere.

The Bankruptcy Code forbids discharge of a federal tax debt not only if no return is filed but if a return was filed within two years preceding the bankruptcy. 11 U.S.C. § 523(a)(1)(B)(ii). Does this mean that since Payne filed his return five years before he declared bankruptcy, he is home free? It does not. The two-year provision is addressed to a different situation from the one in this case, that of the filing of a return that is genuine, but is disqualified from discharge because filed too soon before, and therefore presumably in anticipation of, the bankruptcy. The timing makes it like a payment made to a favored creditor shortly before bankruptcy, which is treated as a preference and voided. It is the preceding subsection in the Bankruptcy Code, the one at issue in this case, that addresses the situation in which no return is filed; it is only in that situation that return and "return" must be distinguished. So there is no inconsistency.

Still another section of the Code forbids the discharge of a debt created by a tax "with respect to which the debtor made a fraudulent return or willfully attempted in any manner to evade or defeat such tax." 11 U.S.C. § 523(a)(1)(C). It could be argued that this is the proper provision under which to test the adequacy of a return offered to discharge a debt in bankruptcy. But the argument ignores the difference between filing a fraudulent return and filing a return that does not do what a return is supposed to do. Payne's untimely return was not fraudu-

lent, or a false denial of liability, as in cases under section 523(a)(1)(C). See, e.g., *In re Birkenstock*, 87 F.3d 947, 952 (7th Cir. 1996); *In re Gardner*, 360 F.3d 551, 557-58 (6th Cir. 2004); *In re Fretz*, 244 F.3d 1323, 1329-31 (11th Cir. 2001). At worst and in all likelihood, he was angling for a discharge, but he was not doing it by concealing anything. Maybe his earlier failure to file timely returns was fraudulent, but the government was not required to bear the burden of proving that in order to deny him a discharge, provided that his untimely return was not a reasonable effort to comply with his tax obligations; we have seen that it was not.

The influential *Hindenlang* decision (on which the other two discharge cases, *Moroney* and *Hatton*, build) states that a return filed after the assessment of tax can never be adjudged an honest and reasonable endeavor to comply with the tax law. 164 F.3d at 1034-35. We need not go that far in this case. There might as we have said be circumstances beyond a taxpayer's control that prevented him from filing a timely return, or even from asking for an extension of the time to file, before the tax was assessed. Payne, however, offered no excuse (we said his lawyer's unsubstantiated assertion at oral argument doesn't count) for his six-year delay in filing; and the assessment was hardly precipitate.

The judgment is reversed with directions to deny the discharge.

REVERSED AND REMANDED WITH DIRECTIONS.

EASTERBROOK, *Circuit Judge*, dissenting.  My colleagues show convincingly that the absence of a statutory definition of the word "return" in tax law leaves the judiciary with discretion to vary the definition according to both economic and legal context. Compare *Badaracco v. CIR*, 464 U.S. 386 (1984), with *Zellerbach Paper Co. v. Helvering*, 293 U.S. 172 (1934). I also agree with their (implicit) conclusion that there is no good reason for a bankruptcy-specific definition of the term. Language newly added to §523(a) provides: "[f]or purposes of this subsection, the term 'return' means a return that satisfies the requirements of applicable nonbankruptcy law (including applicable filing requirements)." 11 U.S.C. §523(a), as amended by §714 of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, 119 Stat. 23, 128-29 (Apr. 20, 2005). Use of non-bankruptcy law to flesh out terms not defined in the Bankruptcy Code is the norm. See *Butner v. United States*, 440 U.S. 48 (1979). Finally, I agree with the majority that the two-year rule in §523 applies only to documents deemed "returns" under nonbankruptcy law; that a given document was filed more than two years before the bankruptcy began does not demonstrate that it is a tax "return."

Application of these principles to Payne is another matter. The majority writes that a document "filed after the [tax] authorities have borne [the] burden [of calculating the amount due] does not serve the purpose of the filing requirement." Slip op. 4. I disagree with this view— and so does the Internal Revenue Service. Any taxpayer who wants to propose a compromise of his tax liabilities *must* file a return, even if the Service already has gone to the trouble of calculating and assessing the tax without his help. 26 C.F.R. §301.7122-1(d), implemented by Form 656.

This regulation did not become effective until 2002, after Payne was in bankruptcy, but it tells us that the Treasury Department does think that a taxpayer's post-assessment statement of all income and deductions is useful. Such a document therefore must be a "return" under my colleagues' definition. (In this court the Department of Justice, representing the United States, has asserted that a post-assessment filing is useless without so much as acknowledging the Treasury regulation.) After the 2005 legislation, an untimely return can not lead to a discharge—recall that the new language refers to "applicable nonbankruptcy law (including applicable filing requirements)." But to say that a document came too late to allow a discharge in cases commenced after October 2005 (when the amendment took effect) is not to say that it wasn't a "return" in 1992, when Payne filed it, or for that matter today.

Post-assessment returns can be useful, whether or not the agency insists on them, because otherwise it must make estimates. Truthful returns, no matter how late, replace estimates with facts. A taxpayer who provides all of the information required by the tax laws may show that his income was more (or less) than the Service believed, leading to a more accurate assessment. Securing this information from the person with the best knowledge about his income and deductable expenses is why tax law requires returns in the first place. Better late than never. The taxpayer then will be unable to deny that he had income; the agency will be able to levy on his assets without protest that it made up the numbers. A belated return will close off some avenues, narrow the dispute that remains should litigation ensue, and—well, it will facilitate compromise. When both sides have the same information, settlement is easier to achieve. That's why the 2002 regulation requires the filing. And for the very reasons that filing is today obligatory if the tax-

payer wants to pursue compromise, it is inappropriate for a court to proclaim that the document is worthless and hence not a "return."

One could say that a given document is not a "return" for some purposes even though the IRS uses that label for others, such as talking compromise, but that would slice things too finely. Suppose Payne had sent the same document, with the same description of his 1986 income and deductable expenses, in 1989, two years after it was due but one year before the IRS made its independent calculation. Would it have been a "return" if unaccompanied by payment? What if Payne had filed it on time in 1987 but paid nothing and hid or squandered assets in an attempt to defeat collection? That would have been culpable—but not because Payne failed to make a "return."

A good part of my colleagues' discussion rests on a view that an honest and reasonable effort to satisfy the law (the fourth element of *Zellerbach*) is one that leads to collection, and they fault Payne's 1992 filing because no money was forthcoming. But this conflates disclosure with substance. The portion of the Internal Revenue Code that must be satisfied honestly and reasonably, if a document is to be called a return, is the statute requiring revelation of financial information, not the statute requiring payment. A cashier's check for all taxes due is not a "return," and its absence does not prevent a full and accurate disclosure of income and deductions from being a "return." Similarly Payne's 1992 filing, if not a "return" based on its contents, would not have become one if the envelope had included a check for $5,000.

The majority's assertion that a document that contains all information required by tax law but rests in Arlington National Cemetery (slip op. 6) is not a "return" illustrates

the difference in our approaches. The problem with mailing a document to the dead letter office rather than the IRS is that it has not been *filed*; the document remains whatever it was before the envelope was addressed. A bearer bond in the purser's safe of the Titanic is still a bearer bond, though the coupons can't be clipped. It makes perfect sense to say: "Perkins completed his tax return but forgot to file it." And if Perkins posts it a year late, the thing being filed is a "return." If it is a return in the IRS's files, it was a return while in Perkins's desk drawer. Judges should not fiddle with the definition of "return" so that one word covers *all* important steps in a system of self-assessment. Timely filing and satisfaction of one's financial obligations are require-ments distinct from the definition of a "return"; the major-ity, however, rolls them all together.

My colleagues have a subsidiary theme: that Payne's "purpose in filing the belated return was to satisfy a condi-tion precedent to obtaining a discharge [in bankruptcy], rather than to pay any of the taxes he owed." Slip op. 5. This is the basis for their assertion that Payne "was angling for a discharge." *Id*. at 8. Yet Payne's purpose is a question of fact, and as far as I can see the United States does not even *contend* that Payne had such a purpose. (Nor, for that matter, does the United States contend that it would have been able to collect more had Payne made a return earlier; the major-ity's speculation that it "might have been able" to do so, slip op. 4, to the extent it implies more than the truism that anything "might" happen, is unsupported by the record.) I rather doubt that Payne had such a motive, because he did not enter bankruptcy until five years after he provided the Service with a return, and the IRS could have levied on his assets in the interim. Had the IRS begun to collect, and Payne responded by declaring bankruptcy, then §523(a)(1)(B)(ii) would have foreclosed a discharge. Because

the IRS had the means to prevent the tax debt's forgiveness, Payne must have had some other goal. At all events, identification of Payne's mental state is for a trier of fact, not an appellate court.

Motive may affect the *consequences* of a return, but not the definition. Section 523(a)(1)(C) provides that a discharge may not be granted concerning any taxes "with respect to which the debtor made a fraudulent return or willfully attempted in any manner to evade or defeat tax law." If employment of a document to avoid paying taxes renders that document a non-return, then §523(a)(1)(C) serves no function, for it supposes that a "return" has been filed (else §523(a)(1)(B)(i) would foreclose discharge). If a document designed to game the system is not a "return" in the first place, then no court ever would get to §523(a)(1)(C). Instead a court should ask the statutory question: whether a person "willfully attempted . . . to evade or defeat" the tax.

But we can't do that now, because the bankruptcy judge did not make (and was not asked to make) a finding on that subject. The United States argued for a *per se* rule: no document filed after an assessment can be a "return," *no matter the taxpayer's motive*. The IRS is stuck with that strategy; a court of appeals should not bail it out by attributing to the taxpayer a motive that has never been proposed before and with respect to which he has had no chance to defend himself, and then reading this motive back into the definition of a "return" rather than working it out through §523(a)(1)(C).

The upshot of my colleagues' approach is that a "bad" motive precludes a discharge, where "bad" is something short of a willful attempt to evade or defeat taxes—and where motive will be imputed on appeal rather than determined at trial. That both denies taxpayers an opportu-

nity for a hearing and contravenes the statute. Section 523(a)(1)(C) does *not* say that "willful tax evasion precludes discharge, and any other purpose may do so too if the judge thinks the taxpayer crafty." We should not overlay open-ended discretion on a concrete text. See, e.g., *Lamie v. United States Trustee*, 540 U.S. 526, 542 (2004); *Dodd v. United States*, 125 S. Ct. 2478 (2005).

The document that Payne filed is a tax return because it contains all of the required information and may have helped the agency, as the 2002 regulation demonstrates. Payne filed this return more than two years before his bankruptcy commenced, so §523(a)(1)(B)(ii) makes these taxes eligible for discharge. The United States has not argued—and we cannot properly declare *sua sponte*— that Payne has willfully attempted to defeat or evade any tax, so §523(a)(1)(C) does not foreclose a discharge. The judgment discharging this debt therefore should be affirmed, no matter what we think of Payne's care, ethics, or strategy. There is no general equitable override to the Bankruptcy Code—as the IRS is quick to observe when a judge might be tempted to do the taxpayer a favor. See *United States v. Reorganized CF&I Fabricators of Utah, Inc.*, 518 U.S. 213 (1996); *United States v. Noland*, 517 U.S. 535, 539, 543 (1996); cf. *Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 206 (1988). That principle works both ways.

A true Copy:

      Teste:

_____

*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*
